958 A.2d 295

**STATE of Maryland**

v.

**Raymond Leon ADAMS.**

**No. 38 Sept. Term., 2007.**

Court of Appeals of Maryland.

Oct. 15, 2008.

244

Cathleen C. Brockmeyer, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland of Baltimore), on brief, for petitioner.

Bradford C. Peabody, Assistant Public Defender (Nancy S. Forster, Public Defender, of Baltimore), on brief, for respondent.

Gary E. Bair, Bennett & Bair, LLP, Greenbelt, for Brief of Amicus Curiae Families Against Injustice in Support of Respondent.

Argued before BELL, C.J., RAKER *, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE, (Retired, specially assigned), ALAN M. WILNER, (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

HARRELL, J.

## I.

## Facts & Process

On the night of 17 February 1979, Kathy P.[1] and her sister, Teresa B., were walking to their car in the parking lot of the Prince George's Motor Lodge, after leaving the Cuckoo's Nest, a nearby bar. The Motor Lodge and the bar are in Prince George's County. A van approached and cornered the women between several parked cars. Three men got out of the van. One of them, later identified as Raymond Leon Adams, was carrying a gun. Adams, threatening to shoot the women, ordered them to get into the van. Adams grabbed Kathy P., struck her over her head, and, together with other men, pushed her into the van. The vehicle, with Kathy P. inside, sped off on Branch Avenue in the direction of the District of Columbia. Adams drove the van. It was stipulated at trial that it is between a mile and a mile and a half from the Prince George's Motor Lodge to the District of Columbia border.

Shortly after being forced into the van, Kathy P. was ordered to remove her jewelry and forcibly stripped of her clothing. One of the other male occupants in the van, later identified as William Raleigh Knight, raped her at gunpoint within minutes of the abduction.[2] Shortly after the first rape,

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. It appears from our review of the record that the victim in the present case was sixteen years old at the time of the attack. We will accord her the anonymity that we would accord any alleged victim of a similar age.

2. The post-conviction court in the present proceedings noted that it "was clear that the first rape occurred within minutes after the kidnap-

the van turned right off of Branch Avenue and went the wrong way on a one-way street. The van was involved in a minor accident with another vehicle. Kathy P. then endured a series of sexual attacks and rapes by several men. She estimated that approximately fifteen minutes elapsed between the kidnapping and this series of sexual attacks.[3] Kathy P. said she asked her abductors whether they were still in Maryland. They responded that they were in Maryland, however, she testified that she did not believe them because they laughed while responding. Just over two hours after the abduction, Kathy P. was pushed out of the van in Prince George's County, Maryland. She knocked on the door of a nearby apartment and was able to contact the Prince George's County Police for assistance. Teresa B. identified the driver of the van as Adams and also identified the passenger in the van as William Raleigh Knight. Kathy P. identified Adams in a photo array shortly after the attack, as well as again several days later and yet again at trial. Adams also was identified by a District of Columbia police officer who stopped Adams while he was driving a van matching the description of the van used in the abduction and attacks. A search of the van revealed three used prophylactics, and a scarf and comb belonging to Kathy P. It was stipulated at trial that Kathy P. suffered physical injuries consistent with a sexual assault.

Adams was charged with kidnapping, robbery with a deadly weapon, six counts of first degree rape, and three counts of first degree sex offense. At his 1979 trial in the Circuit Court for Prince George's County, Adams contended that the rapes occurred outside the State of Maryland, and thus Maryland did not have jurisdiction to try him for the crimes. The State presented two counter-arguments. First, the State contended that the evidence showed that the rapes, in fact, did occur in Maryland. Second, the State argued that, even assuming that the rapes occurred in the District of Columbia, the State could

---

ping began, and thus, almost indisputably occurred inside the Maryland line."

**3.** Another set of attacks commenced at a stop in a parking lot later.

assert jurisdiction under Maryland Code (1957, 1971 Repl. Vol.), Article 27, § 465. Section 465 stated:

If a person is transported by any means, with the intent to violate this subheading [sexual offenses] and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued or ended.

Maryland Code (1957, 1971 Repl.Vol.) Article 27, § 465.

█ Adams retorted that § 465 addressed the matter of venue, not the territorial jurisdiction, of a particular court.[4] Adams further contended that Maryland had "no authority to legislate itself into having jurisdiction over acts that do not occur within the State." After several lengthy discussions of jurisdiction at different stages of the trial, the trial court denied Adams's motions and ruled that the question would be submitted to the jury. At that point, the following discussion took place:

**Court:** ... I think I am going to solve this problem very easily. I am going to instruct on the statute, and also add the question to be decided by the jury where all these acts took place. At this time I may agree with [the State's Attorney]. Maybe at a later time I may disagree with you. If the jury can make a finding it might solve a lot of problems, if this case went to the Court of Appeals or the Court of Special Appeals and there was a specific finding in that regard by the jury.

---

**4.** *See, e.g., State v. Jones,* 51 Md.App. 321, 325, 443 A.2d 967, 970 (1982), *vacated as not ripe,* 298 Md. 634, 471 A.2d 1055 (1984) (holding that § 465 is a venue statute and does not apply to a defendant who transports his victim across state lines). Venue refers to the particular locality within a state that may try a criminal charge. *McBurney v. State,* 280 Md. 21, 31, 371 A.2d 129, 135 (1977). By contrast, " '[t]erritorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory, which generally is within the boundaries of the respective states, may the case be tried in that state.' " *West v. State,* 369 Md. 150, 158, 797 A.2d 1278, 1282 (2002) (quoting *State v. Butler,* 353 Md. 67, 72–73, 724 A.2d 657, 660 (1999)).

**Defense Counsel:** Your Honor, I hate to interrupt the Court, but I think this is the very issue we addressed earlier.

**Court:** Yes.

**Defense Counsel:** The State has not shown anything upon which the jury can make that determination. And that is why I submit to the Court that this should not be passed to the jury.

**Court:** ... [A]ll that I know is that the intent started out in a Prince George's County motel. All I have in front of me at this time is that is where it started. I have testimony from [Kathy P.] that sexual assaults were inflicted on her while the van was in motion, and that subsequent sexual assaults were inflicted on her at various places, and she was told they were in Maryland. Whether she believed what they told her or she didn't believe that makes no difference. Nobody has told me that this incident didn't occur in the State of Maryland. There is no evidence in this case at all that this didn't occur in Maryland, at this juncture. And if somebody does testify that they occurred in the District of Columbia that then becomes in my judgment a factual issue that a jury then can make a determination on.

At this juncture all that I know is it started out and it occurred in Maryland, and that is all I have in front of me. If someone gets up and says it occurred elsewhere I think that it is perfectly reasonable to let a jury make a—that is one of the issues a jury may have to determine.

If this case is ever appealed, or he is convicted and I make a subsequent ruling the statute applies out of state, and the Court of Appeals says I am wrong, or the jury says that it did happen in the District and I am wrong, that ends it right then and there.

Do you [to the State's Attorney] think that is a solution?

**State's Attorney:** I don't really know. It is a good procedure to get the jury to come back with specific findings of fact in a case like this, obviously, if this case is appealed to the Court of Appeals.

**Court:** How would the Court of Appeals know how the jury made a determination, based on what you told me? In other words, you want me to instruct them on the statute?

**State's Attorney:** Yes, sir.

**Court:** That if this defendant formed the intention to commit a sexual assault on this lady, and he formed that intention in the State of Maryland, and they so find, the fact that it happened in the District of Columbia makes no difference, that it could happen anywhere as long as he formed that intention, that is what you say the purpose of the statute is?

**State's Attorney:** That is correct, your Honor.

**Court:** All right. If they find it happened in the District.

Now suppose I agree with you and say you are absolutely right in your interpretation, then this case goes to the Court of Appeals and the Court of Appeals says this is not the law, didn't have any jurisdiction because it happened—they don't really know where it happened. How does the Court of Appeals know where it happened?

**State's Attorney:** Well, I guess they don't. I really don't think there is any reason for the statute to exist—

**Court:** You don't think there is any reason for the statute to exist other than this? You may be absolutely right. You don't want to submit it to the jury on special issue as to this, but you want them instructed that—

**States Attorney:** Special Instruction as to the statute.

**Court:** Well all right. But you think the statute is applicable. All right.

**State's Attorney:** Yes, sir.

**Court:** Do you [to Defense Counsel] agree with that, there should be a special issue before the jury as to where this sexual act occurred?

**Defense Counsel:** Assuming that the Court is ruling that this issue goes to the jury—

**Court:** Yes, that is a pretty good assumption at this time.

**Defense Counsel:** I understand that your Honor.

**Court:** All right.

**Defense Counsel:** I would submit that the Court's proposed method is the better method, and I would ask the Court to do that, to get a specific finding as to whether or not the incidents involving the sexual acts and the rapes took place in the District of Columbia or Maryland.

**Court:** All of them?

**Defense Counsel:** Assuming all of them go to the jury, your Honor, I would assume those questions would have to be answered definitely. I think the jury does have to find—

**Court:** Let's assume I do it that way, what is the burden of proof on that issue?

**Defense Counsel:** It is the same as the burden for any other—

**Court:** Anything else? You have to be convinced beyond a reasonable doubt?

**Defense Counsel:** Yes, your Honor.

**Court:** Do you agree with that [to State's Attorney]?

**State's Attorney:** If the Court submits that special issue?

**Court:** Yes.

**State's Attorney:** Yes, sir.

**Court:** All right.

The trial court proposed a special verdict sheet which included asking the jury whether it found jurisdiction, proven beyond a reasonable doubt, based upon the rapes occurring in Maryland or the application § 465. Adams objected, arguing that there was insufficient evidence for the jury to find that the rapes occurred in Maryland. The judge ruled that the evidence was sufficient to send the issue to the jury. Adams then agreed to the special verdict sheet proposed by the trial court.[5]

---

**5.** During this proceeding, Adams requested and was granted two special instructions to be given to the jury regarding certain incidents that occurred at trial. The first instruction was that the jury was to infer nothing from the fact that they had seen Adams wearing handcuffs during the trial. The second instruction was that the jury was to infer

Accordingly, the trial court gave the jury the following pertinent jury instructions regarding the special verdict sheet:

[You] will make a determination as to each one of these 12 charges, and they are numbered for your benefit, and you will find the defendant either not guilty or guilty of each one. And below that finding, if you find the defendant is guilty, you will also make a finding that the offense either occurred in Maryland or that jurisdiction was obtained in this case under Article 17, 465, of our Annotated Code, which I will tell you about later.

The judge later elaborated on the special verdict question available as to each of the individual counts. For example, he instructed the jury as follows:

Now, when you make that determination or if you make a determination as to first degree rape you will also make a determination as to where this rape occurred, and you will see there is a place for you to check either that the rape occurred in our State or that jurisdiction was obtained under Article 27, Section 465 of our Annotated Code. And our Legislature has enacted a statute that says in regards to sexual offenses if a person is transported by any means with intent to violate this subheading, meaning sexual offenses, and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued, or ended.

If you find that the application of this statute is how this particular sex offense occurred you will check that, if you are not convinced beyond a reasonable doubt that the offense occurred in our state.

In a final reminder to the jury after closing arguments, the trial judge noted, "And also that in regard to both the rape and sexual charges you must determine whether it occurred in

nothing from the absence of the co-defendant, Knight, at trial. Knight pled guilty after the trial commenced and was absent from the defense table for the remainder of the trial.

Maryland or whether there was jurisdiction under the statute. All right."

The trial court also gave "advisory" jury instructions, based on Article 23 of the Maryland Declaration of Rights.[6] Throughout the twenty pages of instructions read to the jury, the trial judge made repeated references to the "advisory" nature of his instructions. For example, he stated: Those of you who have sat previously as jurors in a criminal case know, and for those of you who have not sat previously and who do not know, that in our State, unlike [forty-eight] other states in our country, in a criminal case you as the jury sit not only as what we call the triers of fact, you also sit as what we call the judge of the law. And what this means, in essence, is that the facts in this case as you have sat and listened to for the past five days will be as you find them to be, and the law in this case will be as you find it to be. And because you are both the judges of the fact and the judges of the law anything that I may now tell you about either the facts or the law is purely advisory. You may disregard anything that I tell you, and you may pay absolutely no attention to what I tell you concerning either the facts or the law, with this one admonition concerning the law. You are not to apply the law as you think it ought to be or what it should be, but what it in fact is in this particular case.

And because you are the judges of the law [the State's Attorney] and [Adams's trial counsel] in their closing arguments to you may tell you what they think the law is in our State and how you should apply it in this particular case.

I, therefore, instruct you in an advisory capacity that in this case that you will sit on, that is of a criminal nature, the law places the burden on the State of Maryland to prove that the defendant, and in this case [Adams] is guilty beyond what we call a reasonable doubt. No defendant in

---

6. Article 23 of the Maryland Declaration of Rights states, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

any criminal case has to prove he is innocent. Accordingly, you will assume that [Adams] is innocent unless you are convinced from all the evidence in this case that you have heard for the past five days that he is guilty.

The trial court alluded to the advisory nature of the instructions at least ten times in the course of delivering the charge to the jury. Adams did not object to the references to the advisory nature of the jury instruction, despite their prominence in the charge to the jury.[7]

On 7 December 1979, the jury found Adams guilty on all twelve counts. In addition, the jury made a special finding that all twelve counts occurred within the State of Maryland. Although the option was available on the verdict sheet, the jury did not check the option finding "jurisdiction" under Article 27, § 465. Adams was sentenced to one life term for one count of first degree rape, multiple concurrent life sentences for the remaining rapes and sexual assaults, thirty consecutive years of imprisonment for kidnapping, and twenty consecutive years for robbery.

Adams appealed to the Court of Special Appeals. He raised eight issues.[8] In an unreported opinion filed in 1980, the

---

7. Adams, however, raised several other objections to the jury instructions. He objected to the trial court's refusal to instruct the jury on alleged difficulties in cross racial identification (perhaps representing a degree of prescience to the matter much later discussed in *Smith v. State*, 388 Md. 468, 880 A.2d 288 (2005)). That objection was overruled by the trial court. Adams also objected to the trial court's failure to give an instruction to the jury informing them that they may choose the weight to accord a photographic array and a lineup identification. The judge agreed with Adams and gave the instruction. Finally, Adams objected to the instruction given by the trial court that said a trial is "a search for the truth." Adams contended that the definition of a trial was more properly described as a "determination as to whether or not the State has proven beyond a reasonable doubt that the defendant is guilty." The judge overruled Adams's objection to the "search for the truth" instruction.

8. Adams contended that: (1) the evidence was insufficient for a reasonable jury to conclude that the crimes occurred in Maryland; (2) the in-court identifications by Kathy P. and Teresa B. should have been suppressed; (3) the absence of co-defendant Knight from the trial, after

intermediate appellate court affirmed Adams's conviction. We denied Adams's Petition for Writ of Certiorari from that judgment. *Adams v. State*, 289 Md. 733 (1980).

On 1 April 2004, some twenty-four years after his convictions and affirmance thereof on direct appeal, Adams filed in the Circuit Court for Prince George's County an initial Petition for Post Conviction Relief. The Petition alleged four bases for relief: (1) the trial court improperly gave only advisory jury instructions; (2) the trial court improperly instructed the jury on jurisdiction; (3) the trial court gave an incomplete reasonable doubt instruction; and (4) Adams's trial counsel was ineffective. In support of his claim of ineffective assistance of counsel, Adams alleged that his attorney failed to object to the improper jurisdiction and reasonable doubt instructions and failed to file a Motion for Modification of Sentence. The post-conviction court granted the Petition on the grounds that the advisory jury instructions and the jury instructions on jurisdiction were improper.[9] The Court also granted the Petition based on the ineffective assistance of counsel, specifically Adams's trial counsel's failure to object to the assertedly erroneous jurisdiction instructions.[10]

---

he pled guilty, prejudiced the jury; (4) he was prejudiced when the jury members saw him wearing handcuffs in the hallway of the courthouse; (5) the indictment was invalid because the language of the indictment did not properly differentiate the various counts; (6) the trial court erred in denying Adams's pro se "Motion to Dismiss Indictments Because of Delay to Prosecute"; (7) the trial court erred in refusing to instruct the jury on special difficulties posed by cross-racial identifications; and (8) the trial court erred in instructing the jury that a trial is a "search for the truth."

**9.** The post-conviction judge concluded that the reasonable doubt instruction was proper and that Adams's trial counsel was not deficient in failing to object to the reasonable doubt instruction. Adams does not seek further judicial scrutiny of these rulings.

**10.** The Court also found that Adams's trial counsel was ineffective for failing to file a Motion to Modify Sentence within 90 days, as permitted by Maryland Rule 4–345(b) (former Maryland Rule 774 (Maryland Code, 1957, 1977 Repl.Vol., 1983 Cum.Supp.)). The Circuit Court held that "[Adams] should be entitled to file a belated motion for modification of sentence." This holding was affirmed by the Court of Special

The Court of Special Appeals, on the State's appeal, affirmed the post-conviction Court in a reported opinion. *State v. Adams,* 171 Md.App. 668, 912 A.2d 16 (2006). We granted the State's Petition for Writ of Certiorari. *State v. Adams,* 399 Md. 595, 925 A.2d 634 (2007). The State presents three questions for our consideration:

(1) Under the Maryland Post Conviction Procedure Act, has Adams waived his post conviction complaint that the trial court's advisory jury instructions denied him his constitutional right to due process?

(2) Under the Maryland Post Conviction Procedure Act, has Adams waived his right to challenge an instruction advising the jury that it could find jurisdiction under § 465 of Article 27 and, if not waived, in light of the special verdict in this case, was the instruction harmless?

(3) Did the post conviction court err in concluding that Adams's counsel's performance was deficient because counsel failed to object to the court's instructions on jurisdiction as counsel's failure to object to the instructions was not error and, in any event, was Adams prejudiced?

## II.

### Standard of Review

We "will not disturb the factual findings of the post-conviction court unless they are clearly erroneous." *Wilson v. State,* 363 Md. 333, 348, 768 A.2d 675, 683 (2001) (citing *Oken v. State,* 343 Md. 256, 299, 681 A.2d 30, 51 (1996)); *Gilliam v. State,* 331 Md. 651, 672, 629 A.2d 685, 696 (1993)). Although reviewing factual determinations of the post-conviction court under a clearly erroneous standard, we make an independent determination of relevant law and its application to the facts. *Gray v. State,* 388 Md. 366, 375, 879 A.2d 1064, 1068 (2005); *State v. Peterson,* 158 Md.App. 558, 584, 857 A.2d 1132, 1147 (2004).

---

Appeals. *State v. Adams,* 171 Md.App. 668, 716 912 A.2d 16, 44 (2006). The State, in its Petition for Certiorari here, did not challenge this ruling. Accordingly, regardless of the outcome in the present matter, Adams is entitled to file a belated Motion for Modification of Sentence.

# III.

## Stare Decisis

Adams's flagship contention is that the advisory jury instructions employed at his trial violated the reasoning iterated by this Court in *Stevenson v. State*, 289 Md. 167, 423 A.2d 558 (1980), and *Montgomery v. State*, 292 Md. 84, 437 A.2d 654 (1981). Adams's facially reasonable argument, however, suffers from a fundamental flaw. The holdings in *Stevenson* and *Montgomery*, by their express terms, did not announce new law.

In *Stevenson*, a defendant challenged her conviction for first degree murder on the ground that Article 23 of the Maryland Declaration of Rights violated the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment right to a trial by jury. At Stevenson's trial, the trial court gave broad advisory instructions, much like the advisory instructions given in the present case. Stevenson, however, narrowly objected only to the constitutionality of Article 23, failing to object that the broad advisory instructions given at her trial exceeded the scope of Article 23. In essence, Stevenson mounted a facial challenge to the constitutionality of Article 23. The Court of Appeals affirmed Stevenson's conviction because, although the broad advisory instructions violated the scope of Article 23,[11] a proper application of Article 23 would not violate the Federal Constitution. Thus, Article 23 was not facially unconstitutional.

The Court majority opinion[12] noted that "[i]mplicit in the decisions of this Court limiting the jury's judicial role to the 'law of the crime' is a recognition that all other legal issues are for the judge alone to decide." *Stevenson*, 289 Md. at 179, 423 A.2d at 565. By its terms, *Stevenson* purported to express the

---

**11.** Stevenson's conviction was affirmed because she, much like the present case, did not make a proper, timely objection at the time the instructions were given that the instructions exceeded the proper scope of Article 23.

**12.** Judge Eldridge dissented, joined by Judge Davidson and Judge Cole in part. Judge Eldridge argued, as he does here (see Dissent op. at

limitations on the power of the jury implicit in earlier Maryland appellate decisions. *See, e.g., Lewis v. State,* 285 Md. 705, 724, 404 A.2d 1073, 1083 (1979); *Vogel v. State,* 163 Md. 267, 272, 162 A. 705, 708 (1932); *Bell, alias Kimball v. State,* 57 Md. 108, 120 (1881); *Wheeler v. State,* 42 Md. 563, 570 (1875). "Rather, the *Stevenson* court is clear that it did not make new law, but rather it merely clarified what has always been the law in Maryland." *Jenkins v. Smith,* 38 F.Supp.2d 417, 421 (D.Md.1999), *aff'd, Jenkins v. Hutchinson,* 221 F.3d 679, 684 (4th Cir.2000).[13] The *Stevenson* Court pointed out that "this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited, albeit important, area." *Stevenson,* 289 Md. at 178, 423 A.2d at 564. The majority opinion highlighted, as an example, a then recent decision applying the long established

---

299–301, 958 A.2d at 331–32), that Article 23 was facially unconstitutional. Furthermore, Judge Eldridge contended that the record indicated that a proper objection was made by Stevenson at trial. Judge Cole joined only the portion of Judge Eldridge's opinion discussing Stevenson's objection to the instructions at trial as preserving her appellate argument.

**13.** The dissent contends that *Jenkins* is factually on point. Dissent op. at 332–33, 958 A.2d at 351–52. It is not, however, legally on point. The District Court in *Jenkins* stated that "Jenkins did not raise an objection to the advisory nature of the jury instructions at the trial or on appeal, and thus, consistent with Maryland's procedural default rule, appears to have waived the right to raise the issue on post-conviction or habeas review." *Jenkins v. Smith,* 38 F.Supp.2d 417, 421 (D.Md.1999). That finding, however, did not end the analysis for the federal court:

The analysis in this case does not end here, however. Despite Jenkins having procedurally waived his right to object to the jury instructions, the Circuit Court for Prince George's County addressed on the merits his argument raised for the first time in his fifth post conviction petition and fifth habeas corpus petition. The *Wainwright* rule is therefore inapplicable where the state in effect ignores its own independent state procedural default rule and addresses the merits of an argument. . . . Accordingly, Jenkins' objection to the jury instructions is properly before the Court in this § 2254 petition.

*Jenkins v. Smith,* 38 F.Supp.2d 417, 421–22. Thus, the federal court avoided the issue of waiver because the state court previously addressed Jenkins's issues on the merits. In the present case, however, we review the waiver analysis of the Circuit Court and Court of Special Appeals. Because the Circuit Court for Prince George's County in *Jenkins* addressed the merits, the federal court bypassed the waiver issue.

principle that the jury serves only as a judge of the "law of the crime." *See Lewis v. State,* 285 Md. 705, 724, 404 A.2d 1073, 1083 (1979) (holding that instructions on the voluntariness of confessions are binding, not merely advisory, on the jury, and the jury should be instructed as such).

Because *Stevenson* did not announce a new rule and Adams waived any challenges based thereon, there is no need to consider retrospectivity here. *See Guardino v. State,* 50 Md.App. 695, 702 n. 3, 440 A.2d 1101, 1105 n. 3 (1982) ("No retrospective question was presented by *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980) because it merely affirmed what it found to be long established law with respect to the law-judging function of the jury."); *Prokopis v. State,* 49 Md.App. 531, 535, 433 A.2d 1191, 1194 (1981) ("Applicant acknowledges that *Stevenson v. State* . . . is not retroactive.").

*Montgomery* clarified the decision in *Stevenson.* In *Montgomery,* the defendant was charged with assault with intent to rob. The trial court gave broad advisory instructions similar to the instructions in the present case. We reversed the conviction, holding that because "there was no dispute between the State and Montgomery as to the law of the crime, the trial judge's instruction thereon was binding. . . ." *Montgomery,* 292 Md. at 89, 437 A.2d at 657. We also noted that instructions on matters such as reasonable doubt, the burden of proof, the prohibition on an adverse inference from a defendant's silence, and the jury's restriction to considering only the evidence before them, were always binding on the jury because they were not part of the "law of the crime." Furthermore, in "those circumstances where there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury. . . ." *Montgomery,* 292 Md. at 89, 437 A.2d at 657.[14]

Just as *Stevenson* purported to explain and continue the reasoning of prior decisions of the Court of Appeals, *Mont-*

---

14. Judge Eldridge concurred in the result, joined by Judge Davidson. Judge Eldridge, consistent with his dissent in *Stevenson,* maintained that Article 23 was facially unconstitutional.

*gomery* merely served as an example and application of *Stevenson*. *See Guardino*, 50 Md.App. at 701–02, 440 A.2d at 1105 ("Unlike *Stevenson*, *Montgomery* did not specifically state nor demonstrate that its doctrine was reflected in the prior decisions of the Court. But it is silent as to its retroactive effect. As it serves to explicate *Stevenson*, we assume that its teachings, no less than *Stevenson's*, are an affirmation of prior decisions, in accord with established law consistently followed by the Court of Appeals. . . .").[15]

We shall not here disturb the holdings of *Montgomery* and *Stevenson*. "Stare decisis, which means to stand by the thing decided, 'is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Livesay v. Balt. County*, 384 Md. 1, 14, 862 A.2d 33, 40–41 (2004) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991)). "We are cognizant of the importance of stare decisis and the resulting certainty, definition, and dependability it gives the law." *Willey v. State*, 328 Md. 126, 137, 613 A.2d 956, 961 (1992) (quoting *B & K Rentals v. Universal Leaf*, 324 Md. 147, 158, 596 A.2d 640, 645 (1991)).

The inertial and institutional devotion to stare decisis is not absolute, however, for we will strike down a decision that is "clearly wrong and contrary to established principles." *Townsend v. Bethlehem–Fairfield Shipyard*, 186 Md. 406, 417, 47 A.2d 365, 370 (1946); *Bozman v. Bozman*, 376 Md. 461, 494, 830 A.2d 450, 470 (2003). The Supreme Court of the United States notes that "it is common wisdom that the rule of stare decisis" is not an " 'inexorable command.'" *Planned Parent-*

---

**15.** To be sure, the majority opinions in *Stevenson* and *Montgomery* have not been praised universally from within, *Stevenson* 289 Md. at 189, 423 A.2d at 570 (Eldridge, J., dissenting), *Montgomery v. State*, 292 Md. at 96, 437 A.2d at 660 (Eldridge, J., concurring), and without the Judiciary, Michael A. Millemann, *Collateral Remedies in Criminal Cases in Maryland: An Assessment*, 64 MD. L. REV. 968, 1030 (2005), criticisms echoed by the dissent here.

*hood v. Casey*, 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992). Nevertheless, in the present case, we are unpersuaded that either *Stevenson* or *Montgomery* was held wrongly to be applied in a prospective manner only. In *Stevenson*, the Court considered the history of Article 23 of the Maryland Declaration of Rights and concluded that prior decisions of the Court of Appeals reined in the power of the jury to the extent that only its decisions regarding the "law of the crime" in "dubious factual situations" were a proper exercise of Article 23. *Dillon v. State*, 277 Md. 571, 581, 357 A.2d 360, 367 (1976).[16]

Nonetheless, although we ordinarily would continue with our analysis because we have and will continue to reverse

---

**16.** Maryland Code (2001), Criminal Procedure Article, § 7–106(c) provides that a post-conviction petitioner may obtain relief, even if the claim for relief has been waived or finally litigated, if a judicial decision from a "binding" court imposes a new "procedural or substantive standard" that is "intended to be applied retrospectively." *Stevenson* did not articulate a new "procedural or substantive standard. Therefore, Adams may not obtain relief under § 7–106(c). In any event, such an argument is not properly before this Court. Adams attempts to adopt in this regard, by reference, the arguments contained in an amicus brief filed by Families Against Injustice. Adams cites Maryland Rule 8–503(f), which provides that in a "case involving more than one appellant or appellee, any appellant or appellee may adopt by reference any part of the brief of another." The present case has only a single appellant, the State, and a single appellee, Adams. The rule only permits litigants to adopt the arguments of other parties to the litigation. Thus, this argument is not properly before us.

The dissent is critical of this footnote. Dissent op. at 311–12, 958 A.2d at 338–39 n. 6. Maryland Rule 8–503 requires that a case must "involve[ ] more than one appellant or appellee" before a party may adopt the arguments in the brief of another. Further, the dissent conflates "issues" with "arguments." The two are not the same. The issue of whether § 7–106 applies to Adams's case is properly before this Court. Adams's arguments regarding the application of 7–106(c) are not. In any event, a further footnote duel is pointless. The dissent and majority opinion agree that "the waiver provisions of the Post Conviction Act are not directly applicable to this case." Dissent op. at 302, 958 A.2d at 332–33 n. 1. The considerations discussed in § 7–106(c), nonetheless, may serve as guidance in determining whether discretion should be exercised to excuse a waiver. Further, the real disagreement between the dissent's position and our own is that we conclude that

convictions where a defendant makes a timely objection to erroneous jury instructions, *see, e.g., Davis v. State,* 48 Md. App. 474, 427 A.2d 1085 (1981) (reversing conviction holding that timely objection at trial to "advisory" jury instructions prior to *Stevenson* preserved the error for review on the merits), our inquiry is truncated here because Adams waived many of his claims by not objecting at trial or on direct appeal.

## IV.

### Advisory Instructions

■ In his Petition for Post–Conviction Relief, Adams contended that the advisory instructions based on Article 23 of the Maryland Declaration of Rights violated his right to due process of law under the Fourteenth Amendment to the U.S. Constitution. The State peremptorily contends that Adams waived this challenge.[17] We agree.

The Uniform Postconviction Procedure Act ("UPPA") (Maryland Code (2001), Criminal Procedure Article, §§ 7–101 to 7–301)[18] arguably provides the statutory framework for analysis of Adams's current challenges to his convictions. Section 7–102 permits a challenge to a conviction where the post-conviction issue has "not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction." § 7–102(b)(2). An issue "is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation." § 7–106(b)(1)(i). Where a petitioner could have objected, but failed to make such an allegation of error, "there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation." § 7–106(b)(2). Section 7–106(b)(1)(ii) states

*Stevenson* and *Montgomery* were not "new law" when they were decided.

17. If its waiver argument were found to be lacking or Adams's waiver excused, the State concedes that the challenged instructions were erroneous.

18. Unless otherwise noted, all subsequent statutory references are to Maryland Code (2001), Criminal Procedure Article.

that waiver shall be excused in special circumstances; however, "the petitioner has the burden of proving that special circumstances exist."

In enacting the UPPA, "the legislature employed the concept of an intelligent and knowing waiver in the narrow sense employed by the Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)." *McElroy v. State*, 329 Md. 136, 140, 617 A.2d 1068, 1070 (1993) (citing *Curtis v. State*, 284 Md. 132, 395 A.2d 464 (1978)). In *Curtis*, we distinguished the minimum standards for waiver of a fundamental constitutional right from the standards for waiver of other rights. *Curtis*, 284 Md. at 148, 395 A.2d at 473. Fundamental constitutional rights require an affirmative waiver from a defendant. *See, e.g., Johnson*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (requiring intentional relinquishment of a known right in order to effect waiver of right to counsel in federal criminal actions); *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (requiring knowing and intelligent waiver of right to a jury trial). Non-fundamental rights may be waived without an affirmative acknowledgment of waiver by the defendant to the court. "It is clear that a 'procedural default' in certain circumstances, even where a defendant may personally have been without knowledge or understanding of the matter, may result in his being precluded from asserting important rights." *Curtis*, 284 Md. at 147, 395 A.2d at 472; *see Hunt v. State*, 345 Md. 122, 138, 691 A.2d 1255, 1263 (1997) (" '[T]he waiver of other rights, which ordinarily do not require such knowing and voluntary action for a waiver to be effective, [is] not governed by the definition of waiver in the Post Conviction Procedure Act.' " (quoting *Williams v. State*, 292 Md. 201, 215–16, 438 A.2d 1301, 1308(1981))).

Our cases make it clear that, simply because an asserted right is derived from the Constitution of the United States or the Constitution of Maryland, or is regarded as a "fundamental" right, does not necessarily make the "intelligent and knowing" standard of waiver applicable. Rather, most rights, whether constitutional, statutory or common-law,

may be waived by inaction or failure to adhere to legitimate procedural requirements.

*State v. Rose,* 345 Md. 238, 248, 691 A.2d 1314, 1319 (1997).

■ An erroneous jury instruction, even on reasonable doubt, is not such a fundamental right requiring an affirmative "knowing and intelligent" waiver under UPPA. *See Bowman v. State,* 337 Md. 65, 67, 650 A.2d 954, 955 (1994) (holding that "review of a jury instruction will not ordinarily be permitted unless the appellant has objected seasonably so as to allow the trial judge an opportunity to correct the deficiency before the jury retires to deliberate"); *Foster, Evans & Huffington v. State,* 305 Md. 306, 314 503 A.2d 1326, 1330 (1986) (noting that failing to object to erroneous jury instructions regarding the burden of proof, even in a capital case, constituted waiver); *Hankerson v. North Carolina,* 432 U.S. 233, 244 n. 8, 97 S.Ct. 2339, 2345 n. 8, 53 L.Ed.2d 306 (1977) (noting that states may enforce the "normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error"); *Cirincione v. State,* 119 Md.App. 471, 512, 705 A.2d 96, 115–16 (1998) ("As the Court of Appeals reconfirmed ... the right to a correct jury instruction, even a jury instruction on the definition of reasonable doubt, is not a fundamental right ... [and] may be waived for post conviction purposes by a failure to object at trial." (citing *Rose,* 345 Md. at 250, 691 A.2d at 1320)); *Morris v. State,* 153 Md.App. 480, 517, 837 A.2d 248, 269 (2003) (holding that challenge to erroneous jury instruction on reasonable doubt was waived by failure to object at trial); *Trimble v. State,* 321 Md. 248, 257, 582 A.2d 794, 798 (1990) ("The [instruction] issue is not ... a proper subject for review in this [post-conviction] proceeding because the issue of the instruction was not raised [previously] and was waived."); *State v. Tichnell,* 306 Md. 428, 465–66, 509 A.2d 1179, 1198 (1986) ("[The circuit court] held that because there was no objection to the instruction, the issue was waived and thus not properly before the post conviction court.... [W]e agree with the court's disposition of the issue."); *State v. Colvin,* 314 Md. 1, 23, 548 A.2d 506, 517 (1988) ("holding that when a defendant failed to object to trial court's advisory instructions after

*Stevenson,* the defendant's claims had been waived for the purposes of his post-conviction petition").

We summarized the case law regarding waiver in this area in *Walker v. State,* 343 Md. 629, 644–45, 684 A.2d 429, 436–37 (1996):

> [W]e are aware of no decision by the Supreme Court or this Court holding that waiver of an issue over the accuracy of a jury instruction concerning the elements of an offense requires intelligent and knowing action by the defendant himself.... [A] multitude of cases in this Court[ ] make it clear that the failure to object to a jury instruction ordinarily constitutes a waiver of any later claim that the instruction was erroneous....
>
> ....
>
> Furthermore, we have consistently held that the failure to object to or otherwise challenge a jury instruction constitutes a waiver of the issue for purposes of the Maryland Post Conviction Procedure Act. (Citations omitted).

This is true even of transparently erroneous jury instructions that appear to shift the burden of proof to a defendant. For example, in *Davis v. State,* 285 Md. 19, 400 A.2d 406 (1979), the trial court instructed the jury that "in order to prove an alibi conclusively, the testimony must cover the whole time in which the crime by any possibility might have been committed and it should be rigid, it should be subjected to rigid scrutiny." *Davis,* 285 Md. at 21, 400 A.2d at 406 (1979). The State in *Davis* conceded that the jury instruction was erroneous in that it improperly shifted the burden of proof to the defendant. We held that the challenge to the jury instruction nonetheless was waived by the petitioner's failure to object.

Similarly, in *Rose,* we considered an allegedly erroneous instruction regarding the burden of proof in a criminal action. We stated the "general rule is that the failure to object to a jury instruction at trial results in a waiver of any defects in the instruction, and normally precludes further review of any claim of error relating to the instruction." *Rose,* 345 Md. at 245–46, 691 A.2d at 1317. Rose, however, argued that the

subject reasonable doubt instruction was integral to a fair trial, and any errors in instructing the jury on reasonable doubt were "errors of a constitutional magnitude." *Rose*, 345 Md. at 247, 691 A.2d at 1318. Therefore, Rose argued, a waiver of an error in a jury instruction regarding reasonable doubt required that the defendant knowingly and intelligently make the waiver. We expressly rejected Rose's argument, holding that a claim of error as to a reasonable doubt instruction could be waived by a failure to object at trial.[19]

Applying these principles to the instant case, it is apparent that Adams's claims regarding the erroneous jury instructions were waived. The most egregiously wrong jury instruction at his trial was the statement that the jury may disregard the proper burden of proof in criminal actions. As noted above, the trial court said to the jury, "in an advisory capacity that in this case that you will sit on, that is of a criminal nature, the law places the burden on the State of Maryland to prove that the defendant, and in this case [Adams] is guilty beyond what we call a reasonable doubt." It is uncontested, however, that Adams did not challenge the instruction, either at trial or on direct appeal.[20] *State v. Colvin*, 314 Md. 1, 22–23, 548 A.2d 506, 516–17 (1988), is directly on point. There we stated:

---

**19.** In *Rose,* we noted:
> We are not aware of any decision by the United States Supreme Court or this Court holding that an issue involving the validity of a reasonable doubt instruction, not objected to at trial or raised on direct appeal, may nevertheless be raised for the first time in a post conviction proceeding unless there was an intelligent and knowing waiver by the defendant personally.

*Rose,* 345 Md. at 249, 691 A.2d at 1319. Ten years have elapsed since Rose, and we still are unaware of any such case.

**20.** Conceivably, the instructions could have been challenged on direct appeal, even though unpreserved at trial, under the plain error doctrine. *See, e.g., Himple v. State,* 101 Md.App. 579, 647 A.2d 1240 (1994) (reversing conviction on erroneous jury instructions despite lack of objection at trial because instructions constituted "plain error"); *but see Middleton v. State,* 49 Md.App. 286, 292 431 A.2d 734, 737 (1981) (holding that jury instruction stating that jurors are judges of both law and fact in criminal trial prior to *Stevenson* was not plain error even where *Stevenson* was decided prior to resolution of the appeal); *Hall v. State,* 292 Md. 683, 691 n. 3, 441 A.2d 708, 712 n. 3 (1982) ("Maryland

When submitting guilt or innocence to the jury, the trial court instructed that art. 23 of the Maryland Declaration of Rights made the jury the judge of the law, and that as a result the court's instructions were advisory only and not binding. . . .

There were no exceptions taken to these instructions. On direct appeal when Colvin–El was represented by new counsel, the points were not presented. Under Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 645A(c), part of the Post Conviction Procedure Act, failure to make the allegations is presumed to have been done intelligently and knowingly. Nothing is presented here to rebut the presumption.

Therefore, as was the fate of the defendants' comparable arguments in *Davis, Rose, Foster, Colvin, Cirincione,* and *Morris,* Adams's current challenges to the pertinent jury instructions were waived and mounting those challenges for the first time in a post-conviction proceeding will not support relief.

## IV.

### An Appeal to Our Discretion

■ At his trial, Adams raised no objection to the repeated description of the jury instructions as "advisory." Adams makes no attempt to rebut any presumption that he knowingly waived his right to challenge the instructions.[21] Rather,

---

cases abound with instances where the plain error doctrine was advanced for a failure to instruct and where this Court subsequently denied review."). Plain error review, however, is only available technically on direct appeal from a conviction. *Cirincione,* 119 Md.App. at 512, 705 A.2d at 116 ("Precedent dictates . . . that plain error review is a creature of direct appellate review only and is not available in post conviction proceedings."); *Prokopis v. State,* 49 Md.App. 531, 433 A.2d 1191 (1981) (holding that challenge to jury instructions that stated that the jury is to be the judge of the law was waived because plain error review does not apply in post-conviction proceeding); *Walker,* 343 Md. at 647, 684 A.2d at 438 ("[The rules] authorizing a court to take cognizance of 'plain error' despite the waiver of an issue, literally apply only to direct appellate review of a judgment.").

**21.** Although the two inquiries occasionally overlap and are often confused, the special circumstances inquiry under § 7–106(b)(1)(ii) is a

Adams contends that his failure to object is excused because "special circumstances" justify review of his conviction.[22]

The dissent is correct in its contention that § 7–106 may not be applied to Adams's excusable waiver argument regarding the advisory jury instructions. Dissent op. at 302, 958 A.2d at 332-33. The first case of this Court expressing what appears to be the modern view of the waiver section of the post-conviction statute makes clear that:

Consequently, we believe that the Legislature, when it spoke of "waiver" in subsection (c) of Art. 27, s 645A [now § 7–106(b)], was using the term in a narrow sense. It intended that subsection (c), with its "intelligent and knowing" standard, be applicable only in those circumstances where the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* was applicable. *Other situations are beyond the scope of subsection (c), to be governed by case law or any pertinent statutes or rules.* Tactical decisions,[23] when made by

---

factually distinct inquiry from that regarding the petitioner's attempt to rebut the presumption of waiver under § 7–106(b)(2). In endeavoring to rebut the presumption of waiver, normally the petitioner is attempting to demonstrate that, although he intended to act to preserve an issue for review, an excusable oversight caused the issue not to be preserved. For example, in *Creighton v. State*, 87 Md.App. 736, 591 A.2d 561(1991), a petitioner successfully rebutted the presumption of waiver by showing that he intended to appeal and had directed his attorney to appeal. The petitioner's attorney, however, abandoned the appeal without his client's consent. The Court of Special Appeals held that the petitioner successfully rebutted the presumption of waiver of his right to appeal.

22. The " 'special circumstances' doctrine ... authorizing a court in a post conviction action to excuse a waiver, is applicable only to situations ... requiring intelligent and knowing action before there is a waiver." *Walker*, 343 Md. at 647, 684 A.2d at 438. This Court has applied, however, a special circumstances type of analysis to waivers such as the one in the instant case, where a *Johnson v. Zerbst*-type waiver was not implicated. *Walker*, 343 Md. at 647–48, 684 A.2d at 438. *See Oken v. State*, 343 Md. 256, 273, 681 A.2d 30, 38 (1996) ("Under Maryland Rule 8–131, this Court retains discretion to excuse a waiver [in a post-conviction proceeding]."). In the instant case, the application of a special circumstances type analysis stems from this Court's exercise of discretion, rather than compelled by § 7–106(b)(1)(ii).

23. There is a tactical aspect associated with the decision whether to object to the advisory jury instructions. Judge Markell described the

an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant.

*Curtis v. State,* 284 Md. 132, 149–150, 395 A.2d 464, 474 (1978) (Eldridge, J. writing for the Court) (emphasis added). Thus, Adams's contentions, if reviewable in this proceeding at all, must be governed by caselaw or rule. As discussed above, the caselaw governing erroneous jury instruction challenges is clear. Any later imagined flaw in jury instructions ordinarily is waived by a failure to object at trial.

Further, the rules which permit an appellate court to notice "plain error" technically do not apply to post-conviction proceedings. As the Court noted in *Walker:* Rules 4–325(e) and 8–131(a), authorizing a court to take cognizance of "plain error" despite the waiver of an issue, literally apply only to direct appellate review of a judgment. Moreover, the similar "special circumstances" doctrine set forth in § 645A(c)(1) [now § 7–106(b)(1)(ii)], authorizing a court in a post conviction action to excuse a waiver, is applicable only to situations encompassed by § 645A(c) [now § 7–106(b)], *i.e.,* situations requiring intelligent and knowing action before there is a waiver.

*Walker v. State,* 343 Md. 629, 647, 684 A.2d 429, 438 (1996).[24]

---

advisory jury instruction as a "special constitutional boon" to defendants. Charles Markell, *Trial by Jury: A Two–Horse Team or One–Horse Team,* 42 Md. St. Bar. Assc. Rep. 72, 91 (1937). In 1976, Gary J. Jacobsohn conducted a survey of Maryland judges, soliciting their opinions regarding the advisory jury instruction. Over thirty-eight percent of respondents to the survey said that the advisory instruction "tends to help the Defendant." No respondents said that it helped the prosecution. Gary J. Jacobsohn, *The Right to Disagree: Judges, Juries, and the Administration of Criminal Justice in Maryland,* 1976 WASH. U.L.Q. 571, 588 (1976). In the face of these data, it is obvious why a criminal defendant may decline to object to advisory jury instructions. Recognizing its potential benefits to their cause, some defendants sought to have the advisory jury instruction revived after *Stevenson.* *E.g., Allnutt v. State,* 59 Md.App. 694, 701, 478 A.2d 321, 324 (1984); *Sibiga v. State,* 65 Md.App. 69, 74, 499 A.2d 484, 486 (1985).

24. A similar theory was rejected by the Court of Special Appeals:

Nonetheless, it is recognized that the Court of Appeals possesses discretion to excuse a waiver, outside of § 7–106, in a post-conviction proceeding. Apparently relying on Rule 8–131(a),[25] we have noted that, "[u]nder that rule, the appellate courts possess the discretion to excuse the waiver [in the trial] of a right or claim waivable by less than knowing and voluntary action." *Hunt v. State*, 345 Md. 122, 139, 691 A.2d 1255, 1263. Similarly, in *Oken v. State*, 343 Md. 256, 273, 681 A.2d

---

First, he contends that the hearing judge erred in not applying the plain error set forth in Md. Rule 757h. He suggests that a post conviction hearing judge is authorized to recognize plain error and correct it. The rule, however, is simply not applicable to post conviction proceedings.

In urging that we now apply the plain error rule applicant is actually requesting that we consider this proceeding, not as an application for leave to appeal a denial of post conviction relief, but to recognize it as a direct appeal. We are not empowered to do so, however, even if we were so inclined. The Court of Appeals has held that post conviction may not be employed as a substitute for a direct appeal. *See Kelly v. Warden*, 243 Md. 717, 222 A.2d 835 (1966). Since post conviction may not be used as a substitute for a direct appeal, we may not, under the guise of applying the plain error rule, permit the rule to override the post conviction statute, § 645A(c), under which the hearing judge had determined that the jury instruction issue had been waived. On the contrary, while Art. 27, § 645A(c) obviously applies to post conviction proceedings, Md. Rule 757h. does not. Applicant's sleight of hand will not avail.

*Prokopis v. State*, 49 Md.App. 531, 534, 433 A.2d 1191, 1193 (1981).

**25.** There is no doubt that an appellate court may exercise its discretion under Rule 8–131 to consider an unpreserved issue that should have been raised in the earlier-reviewing post-conviction court or courts. This distinction is key. For example, in *Jones v. State*, 379 Md. 704, 843 A.2d 778 (2004), the Court of Special Appeals exercised discretion to consider the merits of the State's argument mounted initially before the intermediate appellate court, though not properly preserved in the post-conviction trial court. We affirmed the intermediate appellate court's exercise of discretion. *Jones*, 379 Md. at 715, 843 A.2d at 785. In such cases, the appellate court is exercising appellate discretion in its traditional sense. *See also Conyers v. State*, 367 Md. 571, 595, 790 A.2d 15, 29 (2002) ("The State had an opportunity to raise its waiver claim during the post-conviction proceedings, but instead chose to argue Petitioner's *Brady* claims on the merits. As a result, the post-conviction court did not address waiver in connection with these arguments. While this Court may decide, in its discretion and under exceptional circumstances, matters not raised in the proceedings below, the State's contention does not merit exceptional treatment here.").

30, 38 (1996), "we noted that, [u]nder Maryland Rule 8–131, this Court retains discretion to excuse a waiver [in a post-conviction proceeding]." This reliance on Rule 8–131 as the wellspring of appellate discretion to notice waiver in a post-conviction proceeding, independent of the explicit provisions of the Post–Conviction Act, has not been without its critics, however. The Court of Special Appeals summarized the "discovery" of this discretion:

> The Court itself noted the uncertain origin of this authority to excuse, since waivers of non-fundamental rights are not governed by the Act and since Maryland's rules of appellate procedure do not directly apply. [*Walker*] at 647, 684 A.2d at 438. Although Maryland courts have recognized the distinction between waivers of fundamental and non-fundamental rights since 1978, the first time the Court of Appeals ever spoke of such an excusal was in *Oken v. State*, 343 Md. 256, 273–74, 681 A.2d 30, 38 (1996), when it claimed such discretion under Rule 8–131. Prior to that time, a finding of waiver had always been dispositive, and the Court of Appeals had gone so far as to hold that a waived claim was "not . . . a proper subject for review in [a post conviction] proceeding." *Trimble v. State*, 321 Md. 248, 257, 582 A.2d 794, 798 (1990). The *Walker* Court premised its discretion to excuse on *Oken* but also indicated some measure of reliance on *Foster v. State*, 305 Md. 306, 503 A.2d 1326 (1986), which was not a post conviction case. More recently, in *Hunt v. State*, 345 Md. 122, 152, 691 A.2d 1255, 1269 (1997), discretion to excuse was again based squarely on Rule 8–131. *But see State v. Rose*, 345 Md. 238, 250, 691 A.2d 1314, 1320 (1997) (reversing this Court's grant of post conviction relief and remanding with instructions to affirm the circuit court's denial without allowing for this Court to consider whether to excuse the petitioner's waiver).

*Cirincione v. State*, 119 Md.App. 471, 513–515, 705 A.2d 96, 116–17 (1998)

Were we writing on a cleaner slate, revisiting the evolution and basis of this discretion might be a principled undertaking; however, like the summer rule of golf ("play the ball as you

find it"), we shall save that endeavor for another day, if at all.[26] In the present case, the Circuit Court and Court of Special Appeals erroneously analyzed Adams's waiver issue as if it was governed by § 7–106. As noted above, and pointed out by the dissent, § 7–106 does not apply strictly. Thus, if Adams's waiver is to be excused, it must rest on the exercise of our discretion. For reasons to be explained, we shall not exercise our discretion to excuse Adams's waiver.

---

**26.** We can only find one case that has gone so far as to imply a similar discretion in a trial court when it considers a post-conviction petition. *See Walker,* 343 Md. at 647–648, 684 A.2d at 438 ("Nevertheless, as the circuit court recognized in the present case, this Court has taken the position that a court, in a post-conviction proceeding, can excuse a waiver based upon an earlier procedural default if the circumstances warrant such action. In effect, we have upheld the application of the 'plain error' or 'special circumstances' principles to waivers of the type here involved."). As noted in *Cirincione,* the authorities relied upon by *Walker* in support of this assertion, however, do not support *Walker's* expansive view of judicial discretion. *Walker* first cites *Oken,* 343 Md. at 272–274, 681 A.2d at 38. *Oken,* however, states that "[u]nder Maryland Rule 8–131, this Court retains discretion to excuse a waiver." Thus, *Oken* relies upon a rule applicable only to appellate courts considering direct appeals. In addition, *Oken* states only that the Court of Appeals, not a trial court in a post-conviction proceeding, possesses discretion to excuse a waiver. *Walker* also cites *Foster v. State,* 305 Md. 306, 315, 503 A.2d 1326, 1331 (1986), as support for its assertion. *Foster* is inapplicable because it was a case decided on direct appeal. Further, we are unable to see how *Foster* supports the assertion that a trial court has discretion to excuse a waiver in post-conviction proceedings. *Foster* states:

> We recognize that the failure of counsel to raise certain types of issues on appeal, whether by inadvertence or deliberate decision, would not necessarily preclude their consideration in a subsequent proceeding. Such issues include rights which cannot be waived absent intentional and knowing action by the defendant, rights which can only be waived personally by a defendant, matters which are deemed more appropriate for resolution in proceedings subsequent to an appeal such as proceedings under the Post Conviction Procedure Act, Code (1957, 1982 Repl.Vol.), Art. 27, § 645A *et seq.,* or issues where there exist special circumstances excusing waiver. *See* the discussion in *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978). As to other matters, however, "[t]actical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant." *Curtis v. State, supra,* 284 Md. at 150, 395 A.2d 464.

*Foster,* 305 Md. at 315–16, 503 A.2d at 1331 (footnote omitted).

Adams [27] contends that waiver should be excused in his case because (1) the law at the time of his trial was clear that "advisory" instructions were permissible; (2) at the time of the trial there was a misconception by a large segment of the Maryland bench and bar regarding the scope and application of Article 23 of the Maryland Declaration of Rights; and (3) the erroneous jury instructions constitute "plain error."

## A.

### Law at the Time of Trial

Adams contends, and the post-conviction court and the intermediate appellate court agreed, that "state law barred" a contemporaneous challenge to the jury instructions based on their being advisory. The use of the word "bar" is inappropriate in these circumstances.[28] A more accurate perception of

---

**27.** Adams and the State make the same legal error throughout their respective briefs. Both argue "special circumstances" as if § 7–106 applied to the analysis of the waiver arguments in this case. As noted above, § 7–106 does not apply here. Therefore, we shall treat Adams's contentions as if he were arguing in support of an exercise of our discretion to excuse his waiver.

**28.** The use by Adams and the courts below of the word "bar" overtaxes its proper definition. "Bar," used as verb, means "to prevent, especially by legal objection." BLACK's LAW DICTIONARY 158 (8th ed.2004). There was nothing to "bar" Adams from raising objections to the jury instructions. Nothing prevented Adams from making this objection known to the trial court immediately after the jury was given the instructions. At best, Adams's contention should be understood as asserting that had he made a proper objection in this regard, the trial court likely would have overruled his objection. Assuming that to be the case, Adams hardly was "barred" from making such an objection and preserving it for appeal. There is nothing in this record, however, to indicate that such an objection would have been futile. *See Bobbitt v. Allied–Signal, Inc.,* 334 Md. 347, 354, 639 A.2d 142, 145 (1994) (holding that objection is not futile in absence of evidence in the record of impatience or oppressive conduct on the part of the trial judge).

> [T]here must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

Adams's argument is that the settled law at the time of the trial sanctioned advisory jury instructions at Adams's trial. Therefore, Adams argues, his failure to object, i.e., waiver, should be excused.

Adams points to the Supreme Court's holding in *Reed v. Ross*, 468 U.S. 1, 16 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984), that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."[29] Adams's argument fails because the objection that he could have presented at trial was not novel, under either Maryland or federal law. "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all. *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). "The precise contours of the novelty exception to the procedural bar doctrine are not as clear as one might hope." *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir.1992). A constitutional theory of objection is not novel when the debate has been percolating demonstrably for years. *Pruett v. Thompson*, 771 F.Supp. 1428, 1438 (E.D.Va.1991), *aff'd*, 996 F.2d 1560 (4th Cir.1993) (citing 17A Charles A. Wright, Arthur R. Miller & Edward. H. Cooper, FEDERAL PRACTICE & PROCEDURE § 4266.1 at p. 460 n. 48 (1988)).

As noted above, Adams's contention most worthy of consideration is that the advisory nature of the instructions improperly relieved the State of its burden to prove that Adams was guilty beyond a reasonable doubt. *See Montgomery*, 292 Md.

---

*Gore v. State*, 309 Md. 203, 209, 522 A.2d 1338, 1340 (1987)

Furthermore, both *Stevenson* and *Montgomery* were decided relatively contemporaneously with Adams's trial. Had a proper objection been made and overruled, merit in the objection may have been found by the trial court or an appellate court.

**29.** The novelty exception to waiver in federal habeas proceedings and the "cause and prejudice" standard is sufficiently synonymous with the types of factors we consider in deciding whether to exercise our discretion that these federal cases may serve as persuasive authority.

at 91, 437 A.2d at 658 (listing the burden of proof as the first bedrock characteristic "indispensable to the integrity of every criminal trial"). Adam's argument fails, however, because an anticipatorily reasonable basis for an objection was available to Adams at trial. As discussed above, *Stevenson* merely articulated what had been implied for decades in the holdings of the Court of Appeals and other courts.

The constitutional requirement that the State prove all elements of a crime beyond a reasonable doubt was well established before Adams's trial in 1979. In *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970), the Supreme Court held that the "requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation." By all accounts, *Winship* was a landmark case and has been held to put defendants on notice of their right to require the State to carry the beyond a reasonable doubt burden. *Compare Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (holding that a reasonable basis was available to counsel after *Winship* to challenge jury instruction on proper burdens, and thus waiver was unexcused) *with Reed v. Ross*, 468 U.S. 1, 19, 104 S.Ct. 2901, 2912, 82 L.Ed.2d 1 (1984) (holding that reasonable basis was not available to trial counsel to challenge jury instruction on proper burdens prior to *Winship*, thus waiver was excused by cause). "That the jury must be instructed that the Government is required to prove the defendant's guilt 'beyond a reasonable doubt' was not an open question after *Winship*." *Jenkins v. Hutchinson*, 221 F.3d 679, 684 (4th Cir.2000); *see also Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) ("After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed but [also] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

The requirement that the jury be instructed properly regarding the proper burdens was well established at the time of Adams's trial. In *Cool v. U.S.*, 409 U.S. 100, 100, 93 S.Ct. 354,

355, 34 L.Ed.2d 335 (1972), the Supreme Court stated, "In this case, the court below held in effect that in a criminal trial, the jury may be instructed to ignore defense testimony unless it believes beyond a reasonable doubt that the testimony is true. That holding is fundamentally inconsistent with our prior decisions . . . and must therefore be reversed." The Court in *Cool* also noted that any instruction that "allow[ed] the jury to convict despite its failure to find guilt beyond a reasonable doubt" must be reversed. *Cool,* 409 U.S. at 103–04, 93 S.Ct. 354, 34 L.Ed.2d 335.[30]

Maryland law was in accord with these federal precepts prior to Adams's trial in 1979. In *State v. Grady,* 276 Md. 178, 182, 345 A.2d 436, 438 (1975), we held that "under the Federal Constitution, as well as the law of Maryland, the burden is on the State to prove all elements of the alleged crime and to do so beyond a reasonable doubt." In 1971, in describing the jury as the "judges of the law" in the Maryland Constitution, the Court of Special Appeals noted, that "[i]t does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case." *Hamilton v. State,* 12 Md.App. 91, 98, 277 A.2d 460, 464 (1971), *aff'd* 265 Md. 256, 288 A.2d 885 (1972). That language was repeated in *Dillon,* 277 Md. 571, 581–82, 357 A.2d 360 (1976). "We expressly approved these principles in our affirmance of *Hamilton.*" *Blackwell v. State,* 278 Md. 466, 479, 365 A.2d 545, 553 (1976). Questions of law of a constitutional nature were always off limits to the jury. *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962); *Franklin v. State,* 12 Md. 236 (1858); *Hitchcock v. State,* 213 Md. 273, 131 A.2d 714 (1957). Commentators discussing *Hamilton* noted that "[c]learly, the court's pronouncement means that the jury's role as judge of the law does not include judging the validity or merits of the

---

**30.** The Supreme Court also had occasion to discuss the "judges of the law" provision in the Maryland Constitution, noting that it "does not mean precisely what it seems to say." *Brady v. Maryland,* 373 U.S. 83, 89, 83 S.Ct. 1194, 1198, 10 L.Ed.2d 215 (1963).

law; nor does it diminish the judge's authority to rule on the law applicable to the trial process itself." Gary J. Jacobsohn, *The Right to Disagree: Judges, Juries, and the Administration of Criminal Justice in Maryland,* 1976 WASH. U.L.Q. 571, 578 (1976). In July 1979, months before Adams's trial, the Court of Special Appeals noted that the "curious provision of the Maryland Constitution with respect to the jury's being judges of the law has *only meant that where there are conflicting interpretations of law,* the jury may have both interpretations argued to it and the jury may choose between, and further that the jury shall decide whether the law should be applied in dubious factual situations." *Ehrlich v. State,* 42 Md.App. 730, 737, 403 A.2d 371, 376 (1979) (emphasis added). The Court of Special Appeals continued, "In deciding which of two conflicting interpretations of law is correct and in deciding whether the law should apply in a dubious factual situation, the jury is still carrying out its sole mission of determining guilt or innocence. Overriding limitations still abide as to what a jury shall not hear (by way of evidence or argument) *and what a jury shall not do." Ehrlich,* 42 Md.App. at 737–38, 403 A.2d at 376 (emphasis added).

The duty of a juror had been delineated clearly in caselaw prior to *Stevenson. See Hopkins v. State,* 19 Md.App. 414, 420–21, 311 A.2d 483, 487 (1973) ("[W]hen one sits on a jury, he is required to accept and apply the law as the judge gives it to him, whether or not he agrees with it and no matter what his personal feelings are toward the parties in question." (quoting *United States v. Guzman,* 337 F.Supp. 140 (S.D.N.Y. 1972), *aff'd,* 468 F.2d 1245 (2d Cir.1972))); *Neal v. State,* 45 Md.App. 549, 556, 413 A.2d 1386, 1390 (1980) ("A jury in a criminal case has no greater prerogative as judge of the law than would the court have had sitting without a jury ....")

As discussed above, after *Winship* was decided in 1970, it was clearly established that the prosecution must prove all elements of a crime beyond a reasonable doubt. Prior to his trial, Adams, based upon *Hamilton, Dillon, Ehrlich,* and *Hopkins* reasonably could have been expected to be aware that any instruction that he perceived as permitting the jury

to disregard such clearly established constitutional law was improper. It was not novel in 1979 for defense counsel to argue that the State was required to prove all elements of the crime beyond a reasonable doubt. It was similarly not novel for defense counsel to argue that the jury must be instructed that the State is required to prove all elements of the crime beyond a reasonable doubt.

Prior to Adams's trial, this issue had been preserved at trial on several recent occasions for review in reported appellate cases. In *Jones v. State*, 29 Md.App. 182, 202, 348 A.2d 55, 67, (1975), *reversed on other grounds*, 279 Md. 1, 367 A.2d 1, (1976), attorney F. Lee Bailey requested that the trial court instruct the jury that

> the instructions of the Court are the sole and exclusive source of the law and the jury may find the law from no other source than the instructions of the Court and that they are absolutely obligated to follow those instructions, particularly those of constitutional dimension; the most important of which [based on some unusual circumstances in the *Jones* case] in all the circumstances of this trial is the impermissible nature of drawing an inference from the silence of the Defendant.

*Jones v. State*, 29 Md.App. 182, 202 348 A.2d 55, 67 (1975), *reversed on other grounds*, 279 Md. 1, 367 A.2d 1 (1976). In his brief to the Court of Special Appeals, Bailey argued that "to allow juries to generally determine the law is to permit possible violations of criminal defendants' rights which are guaranteed by the federal constitution and binding on the states through the fourteenth amendment."

In *Davis v. State*, 48 Md.App. 474, 427 A.2d 1085 (1981), the defendants objected to an advisory jury instruction on reasonable doubt, an instruction similar to the one at issue in the present case. The trial court overruled the objection, and the defendants appealed. While the appeal was pending, the Court decided *Stevenson*. The Court of Special Appeals, in light of *Stevenson*, reversed the convictions in *Davis*. *Davis* is especially noteworthy here because defense counsel in

*Davis* objected to an advisory instruction *before Stevenson* was decided. In *Robertson v. State,* 295 Md. 688, 689, 457 A.2d 826, 826 (1983), we held that the "defendant's counsel made clear to the trial judge that even though the jury was the judge of the law under Article 23 of the Maryland Declaration of Rights, he was entitled to an instruction that the court's comments on the burden of proof were not merely advisory but were binding upon the jury. Failure to give the requested instruction constituted reversible error." The trial in *Robertson* occurred on 24 November 1980, *before Stevenson* was decided. In addition, the defendants in both *Stevenson* and *Montgomery* had the foresight to object to the advisory nature of instructions prior to this Court's decision in *Stevenson.*

Although the correct objection reasonably was available here to trial counsel based on recent Maryland caselaw alone, trial counsel also could have looked to the annals of great American jurisprudence for inspiration. Justice Story noted in *U.S. v. Battiste,* 24 F. Cas. 1042 (C.C.Mass.1835) [31]:

> ... I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the court. This is the right of every citizen; and it is his only protection. If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views, which different juries might take of it; but in case of error, there would be no remedy or redress by the injured party; for the court would not have any right to review the law as it

---

**31.** Justice Story's opinion "had a far-reaching influence in diverting the current of American judicial opinion away from the doctrine that juries in criminal cases are judges of the law." *Slansky v. State,* 192 Md. 94, 102, 63 A.2d 599, 602 (1949), *superceded by statute, Wilson v. State,* 239 Md. 245, 210 A.2d 824 (1965). One distinguished Maryland judge described it as "never reversed, never modified and often cited with approval." Samuel K. Dennis, *Maryland's Antique Constitutional Thorn,* 92 U. PA. L. REV. 34, 38 (1943).

had been settled by the jury. Indeed, it would be almost impracticable to ascertain, what the law, as settled by the jury, actually was. On the contrary, if the court should err, in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular court may require. Every person accused as a criminal has a right to be tried according to the law of the land, the fixed law of the land; and not by the law as a jury may understand it, or choose, from wantonness, or ignorance, or accidental mistake, to interpret it.

The advisory instruction was also the subject of vigorous debates among notable members of the Maryland Bench and Bar for several decades prior to Adams's trial. *See Stewart v. LaGrand,* 526 U.S. 115, 119, 119 S.Ct. 1018, 1021, 143 L.Ed.2d 196 (1999) (holding that a constitutional claim is not novel where there is an ongoing debate about the issue); *Cole v. Stevenson,* 620 F.2d 1055, 1062 (4th Cir.1980) (holding that a change in law did not excuse waiver). At the time of his published opposition to the practice of advisory instructions, Judge Samuel K. Dennis was, among other things,[32] Chief Judge of the Supreme Bench of Baltimore. Samuel K. Dennis, *Maryland's Antique Constitutional Thorn,* 92 U. PA. L.REV. 34, 34 (1943). Chief Judge Prescott of the Court of Appeals, in an address to the Maryland State Bar Association, described his objection to advisory jury instruction:

I am opposed to it because it violates the fundamental concepts of trial by jury; it has been discarded and repudiated in nearly every jurisdiction where tried; it has retarded the growth of our substantive criminal law; it is contrary to the ancient maxims of the common law; such outstanding leaders of our profession as Justice Story, Lord Mansfield, Charles Evans Hughes, Judges Chesnut, Markell, and Dennis, Charles McHenry Howard and scores of others have spoken or written against it; juries are not trained by

---

32. Dennis also served as U.S. Attorney for the District of Maryland and President of the Maryland State Bar Association.

experience nor training to interpret the law; of manifold other reasons why such an anomalous situation should not be permitted to remain as a blight upon the administration of justice in Maryland, In my humble judgment it is archaic, outmoded, and atrocious.

Judge Stedman Prescott, *Juries as Judges of the Law: Should the Practice Be Continued?*, 60 MD. ST. BAR. ASSC. REP. 246, 257 (1955) (citations omitted). Chief Judge Henderson and Chief Judge Markell of the Court also publicized their objections to the practice of treating juries as the judges of law. Hon. William L. Henderson, *The Jury as Judges of Law and Fact in Maryland*, 52 MD. ST. BAR. ASSC. REP. 184 (1947); Charles Markell, *Trial by Jury: A Two–Horse Team or One–Horse Team*, 42 MD. ST. BAR. ASSC. REP. 72 (1937); *see also* Judge W. Calvin Chesnut, *Courts and Juries,* 46 MD. ST. BAR. ASSC. REP. 159 (1941).

In sum, as *Stevenson* was merely an acknowledgment and application of existing law, there existed a reasonable basis for Adams to object at trial to the facially advisory nature of the instruction. Furthermore, Adams could have formulated an objection to the advisory instructions based on similar objections made in other criminal trials, earlier and contemporaneously published state court opinions, landmark opinions by United States Supreme Court Justices, and publicized comments by distinguished members of the Maryland Bench and Bar.

## B.

### Misconceptions within the Bench and Bar

Adams relies on dicta in *Walker* to support the proposition that a relevant and contemporary "misconception by a large segment of the bench and the bar concerning the [law]" may constitute special circumstances excusing waiver. *Walker,* 343 Md. at 648, 684 A.2d at 438. In *Walker,* a petitioner sought post-conviction review of his waived allegations of error to the jury instructions regarding the intent element of the offense

for which Walker was convicted, arguing that mistake as to the law by a large segment of the bench and bar excused his waiver. Walker argued, and the post-conviction court found, that "prior to *Jenkins*,[33] many trial judges and lawyers [mistakenly] believed that a jury instruction like that given at Walker's trial was a correct statement of the law." *Walker*, 343 Md. at 634, 684 A.2d at 431. The " 'special circumstances' found by the circuit court were that, at the time of Walker's trial, the law concerning the intent element of assault with intent to murder was misunderstood by trial judges and lawyers, and that the law was not finally clarified until this Court's opinion in *State v. Jenkins* . . . after Walker's conviction became final." *Walker*, 343 Md. at 635, 684 A.2d at 432. Eschewing substantive analysis of the legal validity of the petitioner's argument, we rejected his argument because the alleged erroneous instruction regarding intent "was simply not an issue at all" at Walker's trial. *Walker*, 343 Md. at 650, 684 A.2d at 439. For the sake of argument, however, we, in dicta, "assume[d] that, if the circumstances in [Walker's] case [nonetheless had presented an issue regarding intent], the circuit court's decision excusing Walker's waiver of the jury instruction issue would have been warranted." [34] *Walker*, 343 Md. at 648–49, 684 A.2d at 438.

There is some facial justification for Adams's argument that, prior to *Stevenson*, there appeared to be some level of misconception afield among some contingent of the Bench and Bar regarding the proper role of the jury in criminal cases. The

---

33. *State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986) (discussing the distinction between intent element in assault with intent to maim compared with assault with intent to kill).

34. The Court in *Walker* essentially held, without any significant analysis, that the holding in *Franklin v. State*, 319 Md. 116, 571 A.2d 1208 (1990), would be extended. *Franklin*, however, is distinguishable from both *Walker* and the instant case. In *Franklin*, we reversed, on direct appeal, a conviction of assault with intent to murder, because of a jury instruction that we held to be erroneous in *State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986). We reversed the conviction, despite the fact that there was no objection to the instruction, using plain error review.

Court of Special Appeals noted such confusion on at least two occasions. In *Allnutt v. State*, 59 Md.App. 694, 701, 478 A.2d 321, 324 (1984), the intermediate appellate court stated, "Until *Stevenson v. State*, 289 Md. 167, 179, 423 A.2d 558, was decided on December 17, 1980, it was generally believed by bench and bar that a judge's comments as to the law in a criminal case were advisory and not binding on the jury. A jury-twelve lay persons-was to determine not only the evidence but the law of the case." In *Petric v. State*, 66 Md.App. 470, 478, 504 A.2d 1168, 1172 (1986), our appellate colleagues noted, "Ere *Stevenson*, it was generally thought by bench and bar alike that jurors in criminal cases were judges of the law and fact. *Stevenson* made clear that such was not the situation, but that a jury's judicial role was limited to the 'law of the crime.' "

Furthermore, at the time of Adams's trial, Maryland Rule 757(b) stated that "[i]n every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only." *See Guardino*, 50 Md.App. at 701 n. 2, 440 A.2d at 1105 n. 2 ("We note that Rule 757 b requires the court '(i)n every case in which instructions are given' to instruct the jury that the instructions are advisory only. Under the dictates of *Montgomery v. State*, 292 Md. 84, 437 A.2d 654 (1981), this is manifestly not correct."). Those indicia, together with an analysis of the actual state of the law prior to Adams's trial (*supra* at 325–32, 958 A.2d at 349–51), suggest a certain degree of perceptible schizophrenia within the Maryland legal community regarding the proper role of the jury. As the Court of Special Appeals in *Guardino* recognized, the Court of Appeals consistently had limited the power of the jury to determine law outside of "the law of the crime," however, these teachings were "not recognized in practice by many of the trial courts." *Guardino*, 50 Md.App. at 702, 440 A.2d at 1105.

 Despite the potential confusion within the bench and bar over the issue, we shall not exercise our discretion to

excuse Adams's waiver. As in *Oken, Hunt,* and *Walker,* the petitioner's argument shall be deemed waived and unexcused.

■ *Oken* provides a particularly apt comparison. In *Oken,* the defendant [35] argued that his waiver should be excused. We rejected that argument:

> Oken's argument to excuse the waiver, however, is without merit. The "reverse *Witherspoon*[*v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)]" right to exclude jurors for cause was established by the Supreme Court in 1988 in *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). We recognized this right in *Hunt v. State,* 321 Md. 387, 583 A.2d 218 (1990).

*Oken,* 343 Md. at 273, 681 A.2d at 38. Thus, because the law upon which the defendant relied in the post-conviction proceeding to support his issue waived at trial was established at the time of his trial, and hence available to form the basis for a valid objection at trial, we declined to exercise our discretion to excuse the waiver. In the present case, as discussed *supra,* the basis for a valid objection regarding the advisory jury instructions was available in Maryland law at the time of Adams's trial. Although *Stevenson* was decided after Adams's trial, *Stevenson,* by its express terms, only described what already was the law, based upon cases decided well before Adams's trial. We also decline to exercise our discretion because of the potential for unfair prejudice to the State. In deciding whether to exercise discretion to consider unpreserved arguments, "the appellate court should consider whether the exercise of its discretion will work unfair prejudice to either of the parties." *Jones v. State,* 379 Md. 704, 714, 843 A.2d 778, 784 (2004); *see also State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 113 (1994) (noting that "this discretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court"). A delay of twenty-

---

**35.** The defendant's trial in *Oken* ended in January 1991.

four years before asserting his waived arguments (which were based on two cases decided in 1980 and 1981, respectively) may be a testimonial to patience, but the delay poses a real potential for serious hardship and prejudice to the State's ability to mount a new prosecution. This delay is particularly inexcusable because "[a]s originally enacted in 1958, the [Post–Conviction Procedure] Act did not place any limit on the number of post conviction petitions which a petitioner was entitled to file." *Mason v. State*, 309 Md. 215, 217–18, 522 A.2d 1344, 1345 (1987).[36]

Dicta in *Creighton v. State*, 87 Md.App. 736, 744, 591 A.2d 561, 565 (1991), is particularly apt to the "fairness" considerations regarding our exercise of discretion—"It is not right for a prisoner to sit back and wait for memories to fade, for records to disappear, for crucial witnesses to die or otherwise become unavailable to rebut allegations of incompetence or procedural irregularity before filing his or her petition." The same analysis applies to the second consideration in deciding whether to exercise discretion, that "the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Jones v. State*, 379 Md. 704, 715, 843 A.2d 778, 784. To do so in this case would not. As noted by the Court of Special Appeals in *Guardino*, where the jury instruction occurred before *Stevenson* was handed down:

> We appreciate that both the bench and the bar are charged with having knowledge of the law. But in light of Rule 757 h, the failure of the trial judge to recognize that the Court of Appeals had "consistently interpreted" Art. 23 as "restraining the jury's law deciding power," limiting it to the law of the crime, cannot excuse the failure of defense

---

**36.** In 1986, the General Assembly prospectively limited prisoners to two post-conviction petitions. *Mason v. State*, 309 Md. 215, 217–18, 522 A.2d 1344, 1345 (1987). The General Assembly reduced that allowance to one petition in 1995. *Grayson v. State*, 354 Md. 1, 4, 728 A.2d 1280, 1281 (1999).

counsel to recognize that restraint and interpose a timely objection when the trial judge failed to abide by it.

*Guardino,* 50 Md.App. 695, 702, 440 A.2d 1101, 1106 (1982).

## C.

### Plain Error

 Adams contends that his waiver is excused by the fact that the complained-about jury instruction constituted "plain error." Adams's argument fails in the first instance because, as discussed above, "plain error" review under the Maryland Rules is not applicable in post-conviction proceedings.

Adams's argument fails also because the fact that an error was "plain" does not excuse waiver. In *Stevenson,* we held that the objection to the specific advisory instructions had not been preserved for appellate review, despite the fact that Stevenson had preserved a general objection, based upon the Fourteenth Amendment, to advisory instructions. *Stevenson,* 289 Md. at 172–73, 423 A.2d at 561. Although the Court "could have taken cognizance of it on its own motion, [the Court] chose not to do so." *Guardino,* 50 Md.App. at 703, 440 A.2d at 1106; *see also Scarborough v. State,* 50 Md.App. 276, 281 437 A.2d 672, 676 (1981) (declining to exercise discretionary review over unpreserved allegation of error regarding advisory jury instructions in violation of *Stevenson); Simms v. State,* 52 Md.App. 448, 455, 449 A.2d 1196, 1199 (1982) ("Although admitting a 'failure to note proper objection,' appellant last urges that we find plain error in the trial court's jury instruction that its (the court's) charge was 'advisory only.' As we refused to take cognizance of a similar issue in *Guardino* ... we decline to do so here ...." (citing *Guardino,* 50 Md.App. 695, 440 A.2d 1101)). We decline to recognize plain error in the present case.

## IV.

### Jurisdiction Instructions

 Adams also argues that his petition for post-conviction relief should be granted because the trial court gave an

erroneous jury instruction on jurisdiction. The trial court, utilizing a special verdict, instructed the jury that there were two possible bases for jurisdiction. First, the jury may find beyond a reasonable doubt that the crimes occurred in Maryland. Second, the jury may find that the State had jurisdiction to prosecute the crimes under Maryland Code (1957, 1971 Repl.Vol.), Article 27, § 465. Adams's post-conviction contention on this score, however, also has been waived.

As discussed above, it is clearly established that failure to object to a jury instruction at trial normally constitutes waiver of that ground for purposes of the UPPA. Adams failed to object at the time of the instruction and also failed to raise an appropriate issue on direct appeal.[37] Adams has not rebutted the presumption of waiver.

Furthermore, he has not shown any reason for us to excuse this waiver. The arguments upon which Adams relies in his arguments regarding the advisory jury instructions do not apply to his arguments regarding the jurisdiction alternatives. Arguments regarding jurisdiction were reasonably available to his trial counsel. Adams's counsel argued throughout the case about this point. At a preliminary hearing, counsel for Adams and counsel for Adams's then co-defendant, Knight, demonstrated apt understanding of the distinction between venue and jurisdiction.

> **Counsel for Knight:** Now, we think, we submit to the Court, that that conduct, those rapes which occurred outside of the State of Maryland, by virtue of the State's own evidence, this Court does not have jurisdiction over and we ask the Court to determine that question as a preliminary matter, since these counts are present in the indictment and testimony would be allowed otherwise to come before the jury relating to alleged criminal acts over which this Court has no jurisdiction.

---

**37.** Adams merely argued that there was insufficient evidence for the jury to find that the crimes occurred in Maryland.

We think that the reliance of the State upon the provisions of the Maryland Statute in question, in light of the facts, make it really a question of law which can be determined in advance of trial; and therefore, if decided in favor of the defendant would not put the defendant in the position of having evidence come into this trial with respect to the allegations of the other charges in this indictment of rape that are alleged to have occurred in Maryland, that would infect the entire trial with evidence of a great many rapes over which the Court has no jurisdiction. The introduction of that testimony would prejudice the defendant severely, if otherwise not admissible, and so determined later. So, we would ask the Court to determine that as a preliminary matter.

**Court:** All right. I assume you join in that, [Adams's Defense Counsel]?

**Adams's Defense Counsel:** Yes, I would join in [Counsel for Knight's] argument. And I would also add that it is basic law that in order for a given State to have jurisdiction over a criminal act the act basically must have occurred within the State.

Now in this particular case I think it is incumbent upon the State to show the critical element, to wit, the perpetration of a rape occurred in the State of Maryland. As [Counsel for Knight] pointed out, the State's own witnesses, at least in preliminary reports, clearly indicate those acts did not take place in the State of Maryland.

**Court:** All right.

**State's Attorney:** Your Honor, I would point out a number of things. First of all, Article 27, Section 465, I suggest to the Court in fact makes it a crime to actually transport with intent to rape, regardless of where the rape eventually occurs. I would point out, first of all, under that particular statute that even if all the rapes occurred in D.C., which we do not in any way either suggest of [sic] concede, that the State would have jurisdiction, providing that we show that at the time of transportation there, in fact, was an intent to commit rapes. The Legislature I think clearly made it a

crime in and of itself to transport with that intent, made it a crime equivalent to the actual act of rape.

Secondly, in this particular case I think it is without dispute that some of the rapes without a doubt occurred in the State of Maryland.

. . . .

For all those reasons we ask the Court [to] deny the motions.

**Counsel for Knight:** Your Honor, [the State's Attorney's] first comment, that 465 creates a separate crime, I don't believe that is true. But in any event, they weren't indicted for violation of 645, if that us some of new crime that is created.

**Court:** I don't think 465 creates any kind of crime.

**Counsel for Knight:** He indicates a crime.

**Court:** It creates jurisdiction.

**State's Attorney:** That is what I meant to say.

**Court:** I have read this four times, and it says that if somebody transports with intent to violate any of the provisions, and that is any of the provisions of this subheading, which I assume is all rape offenses, and the intent is followed by an actual violation of this subheading, the defendant may be tried in an appropriate court within whose jurisdiction the county lies, where the transportation was offered, solicited, has begun, continued, or ended. I think it describes this. If you form an intention eventually to rape somebody, and you start out in Baltimore and you end up in the State of Washington, and you finally rape her there, I think this statute says that Baltimore has jurisdiction.

**Counsel for Knight:** Well, I would submit to the Court that my interpretation of that statute, and would hope the Court would accept this interpretation of the statute, is that that statute relates to intercountry situations and intrastate situations; that Maryland would be constitutionally powerless to extend its jurisdiction for an act which occurs outside

of its boundaries by saying that if you merely form the intent in Maryland you are guilty of the substantive crime.

That creates constitutional problems which I believe could only be avoided by interpreting that section the way the Court has interpreted that section in the annotation to that section, and that is a Baltimore City–Baltimore County situation, that provides for the place where trial may be held. And certainly there would be no constitutional problem to that, because there is no constitutional right to venue. But there certainly is a constitutional limitation on the power of the Court to extend its jurisdiction beyond the physical boundaries. And we would submit to the Court that the only way to avoid that inherent problem is the Court—and this is the only case that I have been able to find on this particular section—

**Court:** That had to do with Baltimore County—Baltimore City?

**Counsel for Knight:** That is correct. I recognize the facts of that case are of little help under the circumstances.

**Court:** I understand that.

**Counsel for Knight:** But it is the only law that we have in Maryland. And I think that basically jurisdictional and constitutional law tells us that the State of Maryland can't extend its jurisdiction beyond the boundaries for a substantive act. And I think even though it is a venue case, the *McBurney*[38] case is also instructive with respect to this case.

We have here a crime. A crime is not completed when the intent is formed to commit the rape. [Actus reus] is also an integral part of the crime, and that is really what establishes jurisdiction.

So, I submit to the Court that on [the State's Attorney's] legal theory it can't create a separate offense. And I agree with the Court it doesn't purport to create a separate offense. I think it creates a situation where Prince George's County could try a guy for picking up somebody in

---

**38.** *McBurney v. State,* 280 Md. 21, 371 A.2d 129 (1977).

Prince George's County and transporting them and raping them in Montgomery County.

**Court:** All right. Is there a motion here for me to decide this preliminarily?

**Counsel for Knight:** That is correct.

**Court:** All right. Anything else you want to tell me?

**Adams's Defense Counsel:** Your Honor, I would again adopt [Counsel for Knight's] arguments, and I would like to argue to the Court another line of cases where situations did arise where the acts were crossing state lines, particularly between the State of Maryland and the District of Columbia.

In one case, your Honor, the case of *Bowen v. State*, 206 Md. 368 [111 A.2d 844 (1955)], a case of larceny after trust and embezzlement, where the acts were connected with Maryland, but the conversion of the assets and all the transactions involving the checks took place in D.C. The conviction by a Maryland Court was reversed for lack of jurisdiction.

Another case is *Goodman v. State*, 237 Md. 64 [205 A.2d 53 (1964)], where a person obtained a prescription falsely to obtain narcotic drugs in Montgomery County, went to the District of Columbia and passed a prescription, received drugs. The Court held the critical element of the offense, which was passing the drugs, did not take place within the State of Maryland; therefore, Maryland did not have jurisdiction.

**Court:** You didn't have a statute, did you?

**Adams's Defense Counsel:** No, your Honor.

**Court:** Didn't have any kind of statute like this.

**Adams's Defense Counsel:** I would also cite *Urciolo [v. State]*, 272 Md. 607 [325 A.2d 878 (1974)], with which the Court may be familiar.

But your Honor, again I submit that Maryland has no authority to legislate itself into having jurisdiction over acts that do not occur within the State.

During the direct examination of Kathy P., Adams's counsel objected to Kathy P.'s testimony that the rapes occurred on Branch Avenue. At that point, the parties approached the bench, and the following discussion occurred:

**Adams's Defense Counsel:** Your Honor, I am going to object to any testimony about any sexual acts, because as I understand it now counsel is not in a position to proffer that any of those acts took place in the State of Maryland. As I understand it at this point the evidence that the State poses is to the contrary, being that all sexual acts took place within the District of Columbia.

**State's Attorney:** Your Honor, the evidence that we have, and I think it will come out through testimony, is as follows: That they started to undress her while she was on Branch Avenue, toward the District of Columbia; but at some point later she was in fact raped. When she was first raped she asked the individuals in the van where she was. They said in Maryland. She was then moved to another location, at which point she was raped by other individuals. She doesn't know where she was.

. . . .

At any rate, under the jurisdiction statute which I previously cited the Court, Article 27, 465, I think it is quite clear we have the transportation in this county either beginning, continuing or ending, and the intent is, in fact to commit a sexual offense, and when such action as that occurs the statute gives this county jurisdiction to prosecute, and that is the reason we are proceeding.

**Adams's Defense Counsel:** Your Honor, it is the position of the defendant that this statute cannot extend the jurisdiction of the State of Maryland beyond the State borders, but must be strictly within the counties within the state.

The exchanges illustrate that not only was the post-conviction argument regarding jurisdiction reasonably available to be made by Adams's counsel at trial, but that Adams's counsel understood the distinction between jurisdiction and venue. Therefore, Adams's objection regarding the jury instructions

and special verdicts regarding jurisdiction was waived by his failure to object at trial or raise the issue on direct appeal.[39]

## V.

### Ineffective Assistance of Counsel

Adams contends that his trial counsel was ineffective for failing to object to the jury instructions on jurisdiction. Unlike most of his other post-conviction claims, this contention has been not waived by inaction in the prior proceedings. Nonetheless, he shall not prevail with his arguments.

The trial court instructed the jury, "If you find that the application of this statute is how this particular sex offense occurred you will check that, if you are not convinced beyond a reasonable doubt that the offense occurred in our state." The instruction regarding the special verdict was repeated several times throughout the charge to the jury. Adams's trial counsel not only did not object, but actually requested the court to instruct the jury on a specific finding. The following exchange is particularly relevant.

**Adams's Defense Counsel:** I would submit that the Court's proposed method is the better method, and I would ask the Court to do that, to get a specific finding as to whether or not the incidents involving the sexual acts and the rapes took place in the District of Columbia or Maryland.

**Court:** All of them?

**Adams's Defense Counsel:** Assuming all of them go to the jury,[40] your Honor, I would assume those questions would

---

**39.** It is of no import that Adams contends that the jury instruction may have confused the jury or "undercut" his defense. *See Pennington v. State*, 53 Md.App. 538, 551, 454 A.2d 879, 886 (1983), *vacated on other grounds*, 299 Md. 23, 472 A.2d 447 (1984) (declining to review, under plain error review, allegations that jury instructions were confusing).

**40.** At the time of this discussion, Adams's counsel was waiting on a ruling on a motion for acquittal where he had argued that there was insufficient evidence for the case to go to the jury. The motion was later denied. The Court of Special Appeals affirmed on direct appeal, holding that there was sufficient evidence from which a reasonable jury

have to be answered definitely. I think the jury does have to find—

**Court:** Let's assume I do it that way, what is the burden of proof on that issue?

**Adams's Defense Counsel:** It is the same as the burden for any other—

**Court:** Anything else? You have to be convinced beyond a reasonable doubt?

**Adams's Defense Counsel:** Yes, your Honor.

■ Adams's ineffective assistance of counsel claims are governed by the two-part standard announced in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

A defendant claiming ineffective assistance of counsel must show (1) that counsel's performance was deficient, i.e., that the representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, *i.e.,* a probability sufficient to undermine confidence in the outcome.

*State v. Borchardt,* 396 Md. 586, 602, 914 A.2d 1126, 1135 (2007).

■ "There is, however, a heavy burden on the defendant to establish the deficiency." *Harris v. State,* 303 Md. 685, 697, 496 A.2d 1074, 1080 (1985). "The ineffective assistance prong of *Strickland* is satisfied only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Borchardt,* 396 Md. at 623, 914 A.2d at 1147 (citations omitted).

■ Adams's ineffective assistance of counsel claim fails both prongs of the *Strickland* test. First, the performance of

could find beyond a reasonable doubt that the crimes occurred in Maryland. That issue has been finally litigated and is not before us here.

Adams's trial counsel regarding the jurisdiction instructions was not deficient. Adams's claims that his trial counsel should have objected to the instruction on jurisdiction necessarily includes a claim that the counsel should have objected to the special verdict. It would be impossible for the trial court to seek a special verdict on both the location of the crime and the application of § 465 if the trial court could not instruct the jury on how to come to such a verdict. Adams's claims fail, however, because failing to object to the special verdict was not deficient performance. A special verdict is a proper method to create an unambiguous record for appeal. "We have recommended, and continue to recommend, that trial judges use a special verdict to avoid ... ambiguity." *Dixon v. State,* 364 Md. 209, 245 n. 33, 772 A.2d 283, 304 n. 33 (2001) (citations omitted); *Gover v. Turner,* 28 Md. 600 (1868) (holding that special verdicts may be found in criminal as well as in civil cases); *see State v. Frye,* 283 Md. 709, 723, 393 A.2d 1372, 1379 (1978):

> (Where there is more than one ground for a verdict on a criminal charge, but where the ramifications of a guilty verdict on that charge will be different depending upon the ground chosen by the jury .... the court should ... give them appropriate instructions so that the basis of a ... verdict will be revealed. [Citations omitted] ).

In the present case, the trial court explained the ambiguity that otherwise could result from a guilty verdict absent the special finding. Any appellate review would be hampered by the lack of a clear finding by the jury, likely necessitating a new trial or dismissal.[41]

---

41. There is a basis for a tactical decision to permit the trial court to instruct the jury on § 465. The instructions to the jury were clear that they were to consider first whether the rapes occurred in Maryland. If they could not find that beyond a reasonable doubt, only then were they to proceed to potential jurisdiction under § 465. If the jury found jurisdiction under § 465, it necessarily would have found a reasonable doubt that the rapes occurred in Maryland. On appellate review of a conviction, Adams would be in a better position with a conviction with jurisdiction founded on § 465 than a general verdict. If the review was of a general verdict, the case likely would be remanded for a new trial

The Court of Special Appeals here found that Adams's trial counsel's performance was deficient because he failed to object to the instruction despite the fact that *McBurney v. State*, 280 Md. 21, 371 A.2d 129 (1977), "proclaiming that § 465 of Article 27 had no extra-territorial effect, was handed down more than two years before [Adams's] trial." *State v. Adams*, 171 Md. App. 668, 711, 912 A.2d 16, 42 (2006). We are at a loss to appreciate how *McBurney* could be read to contain such a

---

because any appellate court would be unable to discern whether the jury verdict was based upon an impermissible interpretation of a venue statute. If the verdict was based on a special verdict under § 465, Adams would have a valid argument that the conviction should be reversed and remanded with instructions to the trial court to enter a verdict of not guilty because, by addressing § 465, the jury necessarily would have found that there was a reasonable doubt whether the rapes occurred in Maryland. Adams could argue such a finding mandates that a judgment of not guilty be entered in his favor. Jeopardy would have attached, and Adams would be free from re-trial by the State. This, of course, would be a far better result than the remand for a new trial based on the general verdict because Adams, a defendant accused of brutal and violent crimes and relying on a technical jurisdictional defense, would again have to face a jury of his peers. That the jury found that the crimes actually occurred in Maryland does not alter our analysis of the possible tactical nature of Adams's trial counsel's decision. "We are, however, without authority to review errors in trial tactics of defense counsel or to speculate as to possibilities that different tactics might have produced a different result." *Madison v. State*, 200 Md. 1, 8–9, 87 A.2d 593, 596 (1952); *see also Vickers v. State*, 320 Ark. 437, 898 S.W.2d 26, 28 (1995) ("[M]atters of trial tactics and strategy . . . are not grounds for post-conviction relief."); *Strickland*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . .").

Furthermore, that the jury was instructed on the special verdict only increases the potential for a "compromise verdict" regarding jurisdiction. If a compromise verdict were to occur, finding jurisdiction based on § 465, it could have set in motion the wheels leading to Adams's outright acquittal. Adams may now claim that the special verdict and jurisdiction instruction were improper and he suffered prejudice; however, at the time of the trial, it may have been the only trial tactic that possibly could have resulted in an acquittal in spite of the substantial evidence of his guilt. This Court will not find counsel to be ineffective where there is a reasonable tactical basis to support trial counsel's actions. *See Oken*, 343 Md. at 283, 681 A.2d at 43 (holding that to succeed on a claim of ineffective assistance of counsel, a petitioner must "overcome the presumption that the challenged action might, under the circumstances, be considered sound trial strategy").

"proclamation." We need not summarize *McBurney* here, as it is sufficient to the moment to observe that the Court in *McBurney* discussed neither § 465 of Article 27 nor extra-territorial jurisdiction. It merely offered a brief discussion of the difference between jurisdiction and venue. Adams's trial counsel, and for that matter the trial court, understood the difference between jurisdiction and venue.

■ The focus of Adams's post-conviction argument concerns the application of § 465. Its resolution depends on whether § 465 was intended to address venue or was a jurisdiction-expanding statute. Either interpretation was reasonable, and thus, Adams's counsel's performance was not deficient for failing to object. The law on extra-territorial jurisdiction is well-settled that states validly may expand their common law territorial jurisdiction by statute to the fullest extent permitted by the Constitution. *See West v. State*, 369 Md. 150, 161, 797 A.2d 1278, 1284 (2002) ("[M]any states have by statute expanded territorial criminal jurisdiction, so that, if any element of an offense takes place in the state, the state would have jurisdiction. Maryland, however, has not enacted such a statute." (citing *Pennington v. State*, 308 Md. 727, 728–29 n. 2, 521 A.2d 1216, 1216–17 n. 2 (1987))). Although it was later held to be a statute addressing venue, § 465 reasonably could be interpreted by counsel validly to be an effort to expand Maryland's territorial jurisdiction.

Additionally, Adams's trial counsel was not deficient because he properly preserved his argument that § 465 did not expand Maryland's territorial jurisdiction. In fact, the trial court explained to Adams's counsel exactly how this particular instruction would assist him if the ruling on the statute later proved to be the subject of an appeal.

**Court:** ... I think I am going to solve this problem very easily. I am going to instruct on the statute, and also add the question to be decided by the jury where all these acts took place. At this time I may agree with [the State's Attorney]. Maybe at a later time I may disagree with you. If the jury can make a finding it might solve a lot of

problems, if this case went to the Court of Appeals or the Court of Special Appeals and there was a specific finding in that regard by the jury.

**Adams's Defense Counsel:** Your Honor, I hate to interrupt the Court, but I think this is the very issue we addressed earlier.

**Court:** Yes.

**Adams's Defense Counsel:** The State has not shown anything upon which the jury can make that determination. And that is why I submit to the Court that this should not be passed to the jury.

. . . .

**Court:** If this case is ever appealed, or he is convicted and I make a subsequent ruling the statute applies out of state, and the Court of Appeals says I am wrong, or the jury says that it did happen in the District and I am wrong, that ends it right then and there.

. . . .

**State's Attorney:** . . . It is a good procedure to get the jury to come back with specific findings of fact in a case like this, obviously, if this case is appealed to the Court of Appeals.

**Court:** How would the Court of Appeals know how the jury made a determination, based on what you told me?

. . . .

**Court:** Now suppose I agree with you and say you are absolutely right in your interpretation, then this case goes to the Court of Appeals and the Court of Appeals says this is not the law, didn't have any jurisdiction because it happened—they don't really know where it happened. How does the Court of Appeals know where it happened?

Based on this discussion, it is apparent that the issue properly would have been preserved for appeal, if in fact the jury did not find that the rapes actually occurred in Maryland. The jury found that the rapes occurred in Maryland, however, and thus the tactically preserved issue regarding the interpretation of § 465 became moot.

Adams also fails to demonstrate here a substantial probability that counsel's failure to object to the instruction altered the

outcome of his case.[42] The jury was instructed clearly that they could find, if convinced beyond a reasonable doubt by evidence, that the rapes occurred in Maryland. The trial court held, and the Court of Special Appeals affirmed, that the evidence was sufficient for the jury to so conclude. Adams, without citation to any authority, argues in his post-conviction proceeding that his trial counsel "utterly failed" to object to a "completely irrelevant" instruction that "completely undercut" the defense that he had "extensively argued" to the jury. The gratuitous use of adverbs does not obscure the lack of authority. We fail to understand how a reasonably simple special verdict instruction so distracted and confused the jury that it undercut Adams's arguments regarding the location of the crimes. Furthermore, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, or that the errors impaired the presentation of the defense." *Harris v. State*, 303 Md. 685, 700, 496 A.2d 1074, 1081 (1985). The bare assertion of "completely undercutting" the defense does not carry the day here.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY RESPONDENT.**

BELL, C.J., BATTAGLIA and ELDRIDGE, JJ., Dissent.

---

**42.** In the typical *Strickland* analysis, we would review evidence against the petitioner to determine if, but for counsel's errors, "substantial possibility" existed that the result of the proceedings would have been different. *Bowers v. State*, 320 Md. 416, 426–27, 578 A.2d 734, 739 (1990). In the instant case, however, we shall not consider the substantial evidence indicating Adams's guilt because the result of his trial would have been different if he was able to raise a reasonable doubt that the "vital" element of the crime of rape, the proscribed harmful physical contact with the victim, occurred in Maryland. *West*, 369 Md. at 158, 797 A.2d at 1283.

ELDRIDGE, J., dissenting.

I would affirm the judgments of the Court of Special Appeals and the Circuit Court for Prince George's County. The majority opinion today, like the majority opinion in *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), mis-reads the pre–1980 opinions of this Court dealing with the Maryland constitutional provision making juries the judges of the law in criminal cases. Moreover, the majority opinion in the case at bar is replete with erroneous statements, unsupported assertions, and faulty analysis.

The principal issue before this Court is whether the respondent Adams is entitled to post-conviction relief even though, at his 1979 trial, there was no objection to the advisory nature of the trial judge's jury instructions. Under our cases, if *Stevenson v. State, supra,* and *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981), represented a new constitutional ruling or set forth a new constitutional standard governing Maryland criminal proceedings, and were retroactive, Adams is entitled to a new trial.

An examination of this Court's pre-*Stevenson* opinions, construing or applying the state constitutional mandate that juries are the judges of the law in criminal cases, demonstrates that *Stevenson* and *Montgomery* constituted a major departure from this Court's previous opinions. The *Stevenson* and *Montgomery* interpretation of the constitutional provision making juries the judges of the law in criminal cases was a new interpretation, and it was fully retroactive. This Court's opinions clearly entitled Adams to a new trial governed by the principles set forth in *Stevenson* and *Montgomery.*

I.

Before turning to the principal issue in this case, however, there is a preliminary matter which should be noted. As set forth in my dissenting opinion in *Stevenson v. State, supra,* 289 Md. at 189–204, 423 A.2d at 570–577, and my concurring

opinion in *Montgomery v. State, supra,* 292 Md. at 96, 437 A.2d at 660 (1981), I continue to believe that the first paragraph of Article 23 of the Maryland Declaration of Rights, on its face, violates the Constitution of the United States.

The first paragraph of Article 23 mandates: "In the trial of *all criminal cases,* the Jury shall be the Judges of *Law,* as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." (Emphasis added). The majority construes the phrase "all criminal cases" to mean only some criminal cases and the word "Law" to mean only a very small portion of the applicable law. This approach is in sharp contrast with the numerous opinions of this Court holding that constitutional or statutory language should not be distorted in order to reach a particular result. *See, e.g., Bednar v. Provident,* 402 Md. 532, 543–544, 937 A.2d 210, 216 (2007) (The word "any" in a statute "does not mean only 'some' "); *Bowen v. Annapolis,* 402 Md. 587, 615, 937 A.2d 242, 250 (2007) (The " 'meaning of the [word] "any" does not imply limitation' "); *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001) (This Court does not "engage in forced or subtle interpretation in an attempt to . . . limit the [enactment's] meaning"); *Montrose Christian School v. Walsh,* 363 Md. 565, 595, 770 A.2d 111, 129 (2001) (To substitute the word "primarily" for the word "purely" in an enactment, would " 'be to re-draft the [enactment] under the guise of construction,' " quoting *Davis v. State,* 294 Md. 370, 378, 451 A.2d 107, 111 (1982)).

As shown later in this opinion, prior to the *Stevenson* case in 1980, the state constitutional provision making the jury the judge of the law in a criminal case was largely construed as it read. Nevertheless, whether construed broadly in accordance with this Court's opinions before 1980, or "construed" narrowly in accordance with the *Stevenson* re-draft, the Maryland constitutional provision violates the Due Process Clause of the Fourteenth Amendment and violates the Jury Trial Clause of the Sixth Amendment. The state constitutional provision is also inconsistent with the Equal Protection Clause of the Fourteenth Amendment.

As discussed in the *Stevenson* dissent, 289 Md. at 191, 423 A.2d at 571, "[a]n essential principle of 'due process of law' is the right to have a case tried and decided in accordance with the law of the jurisdiction." A system which allows a jury in a criminal case to decide the applicable law generally, or even just "the law of the crime," and tells the jury that the trial judge's instructions on the law are "advisory" and that the jury is free to disregard the instructions, is flatly inconsistent with the right to be tried in accordance with the law of land. Furthermore, "the Sixth Amendment provision for trial by jury in criminal cases contemplates a jury which is the judge of the facts, receiving binding instructions on the law from the court." *Stevenson* (dissenting opinion), 289 Md. at 193–194, 423 A.2d at 572. In addition, when one jury makes a determination as to what the law is, and another jury decides that the same law is totally different, even though the circumstances of both cases are the same, the defendants are not being accorded equal protection of the laws. As long as the trial judge's instructions, including advisory instructions, are free from error, as long as the evidence is sufficient under the trial court's and appellate court's determination of the correct law, and if no erroneous rulings appear on the record, the different determinations of the "same law" by different juries will not be corrected.

The first paragraph of Article 23, either as written or as redrafted by the *Stevenson* majority and the majority today, simply cannot be reconciled with federal constitutional requirements.

## II.

Another matter should be addressed before discussing the novelty and retroactivity of the *Stevenson* and *Montgomery* interpretation of the state constitutional provision making juries the judges of the law in criminal cases. That matter concerns the applicable body of "waiver" law.

The Circuit Court for Prince George's County, the Court of Special Appeals (*State v. Adams*, 171 Md.App. 668, 682, 912

A.2d 16; 24–25 (2006)), and the parties have proceeded as if the waiver provisions of the Maryland Post Conviction Procedure Act, § 7–106(b) and (c) of the Criminal Procedure Article, are directly applicable to this action under the Post Conviction Procedure Act. They are not. Whether Adams is precluded from post conviction relief, because of the failure to challenge the advisory nature of the jury instructions at his 1979 trial, is governed by this Court's case law and any applicable provisions of the Maryland Rules.[1] That case law, however, reflects principles similar to those embodied in § 7–106(b) and (c) of the Post Conviction Procedure Act.

This Court, in *Curtis v. State*, 284 Md. 132, 149–150, 395 A.2d 464, 474 (1978), after reviewing the language and history of the Maryland Post Conviction Procedure Act, as well as cases applying the statute, held as follows:

> "Consequently, we believe that the Legislature, when it spoke of 'waiver' in subsection (c) of Art. 27, § 645A [now § 7–106(b) and (c) of the Post Conviction Procedure Act], was using the term in a narrow sense. It intended that subsection (c), with its 'intelligent and knowing' standard, be applicable only in those circumstances where the waiver concept of *Johnson v. Zerbst[,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ] and *Fay v. Noia[,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ] was applicable. Other situations are beyond the scope of subsection (c), to be governed by case law or any pertinent statutes or rules. Tactical decisions, when made by an authorized competent

---

1. The majority opinion in the case at bar, for the most part, seems to agree that the waiver provisions of the Post Conviction Procedure Act, § 7–106(b) and (c) of the Criminal Procedure Article, are not directly applicable to this case. Nevertheless, the majority makes much ado over whether Adams's argument based on § 7–106(c) is, procedurally, properly before the Court (majority opinion at 260, 958 A.2d at 307–08, n. 16). The majority asserts that an argument based on § 7–106 (presumably § 7–106(b)) is properly before us whereas Adams's argument under § 7–106(c) is not. The majority also states that the Post Conviction Procedure Act, including § 7–106(b) and (c), "arguably provides the statutory framework for analysis of Adams's current challenges to his convictions" (*id.* at 261, 958 at 308).

attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant." [2]

More recently, this was explained by Judge Karwacki for the Court in *Hunt v. State*, 345 Md. 122, 137–138, 691 A.2d 1255, 1262–1263, *cert. denied*, 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997):

"Thus, the General Assembly contemplated, for purposes of subsection (c) of the Post Conviction Procedure Act, that

---

**2.** When the *Curtis* case was decided, the waiver provisions of the Maryland Post Conviction Procedure Act were codified in Maryland Code (1957, 1976 Repl.Vol.), Art. 27, § 645A(c). By Ch. 10 of the Acts of 2001, the waiver provisions of the Maryland Post Conviction Procedure Act were re-codified as § 7–106(b) and (c) of the Criminal Procedure Article. As pointed out in the Revisor's Note, the 2001 re-codification of the waiver provisions was "without substantive change." Section 7–106(b) and (c) provides as follows:

"(b) *Waiver of allegation of error.*—(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

 1. before trial;

 2. at trial;

 3. on direct appeal, whether or not the petitioner took an appeal;

 4. in an application for leave to appeal a conviction based on a guilty plea;

 5. in a habeas corpus or coram nobis proceeding began by the petitioner;

 6. in a prior petition under this subtitle; or

 7. in any other proceeding that the petitioner began.

 (ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.

 2. The petitioner has the burden of proving that special circumstances exist.

"(c) *Effect of judicial decision that Constitution imposes new standard.*—(1) This subsection applies after a decision on the merits of an allegation of error or after a proceeding in which an allegation of error may have been waived.

(2) Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:

 (i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and

 (ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence."

waiver there described assumed the restrictive character to which the Supreme Court had ascribed it. This has necessarily led to a dual framework under which a post-conviction petitioner in Maryland may endeavor to assert certain, specific claims or rights not previously raised. That is to say, the nature of the right involved will determine whether the decision is governed by Art. 27, § 645A(c), or pertinent case law, statutes, or rules. On the one hand, if a defendant's claim does encompass that narrow band of rights that courts have traditionally required an individual knowingly and intelligently relinquish or abandon in order to waive the right or claim, *Walker v. State,* 343 Md. 629, 642, 684 A.2d 429, 435 (1996), the failure to do so knowingly and intelligently will not preclude raising the matter on post-conviction review. Courts, however, do not apply the same standard of waiver to 'the vast array of trial decisions, strategic and tactical, which must be made before and during trial.' *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976) . . . ."

In *Walker v. State,* 343 Md. 629, 641–642, 684 A.2d 429, 435 (1996), the Court stated:

"The circuit court's application of the definition of waiver in the Post Conviction Act's subsection (c) may well have been correct if the waiver issue in this case were governed by subsection (c). The court, however, overlooked our interpretation of the statute as a whole, set forth in *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978), and reaffirmed on numerous occasions. *See, e.g., Oken v. State,* 343 Md. 256, 270–272, 681 A.2d 30, 37–39 (1996); *McElroy v. State,* 329 Md. 136, 140–142, 147–149, 617 A.2d 1068, 1070–1071, 1073–1075 (1993); *Trimble v. State,* 321 Md. 248, 259, 582 A.2d 794, 799 (1990); *State v. Romulus,* 315 Md. 526, 539–540, 555 A.2d 494, 500 (1989); *Martinez v. State,* 309 Md. 124, 141, 522 A.2d 950, 958–959 (1987); *State v. Calhoun,* 306 Md. 692, 702–704, 511 A.2d 461, 465–467 (1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987); *State v. Tichnell,* 306 Md. 428, 464, 509 A.2d 1179, 1197, *cert. denied,* 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986); *Foster,*

*Evans and Huffington v. State*, 305 Md. 306, 315–316, 503 A.2d 1326, 1331, *cert. denied*, 478 U.S. 1010, 1023, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 723, 745 (1986); *Williams v. State*, 292 Md. 201, 215–216, 438 A.2d 1301, 1308 (1981); *State v. Magwood*, 290 Md. 615, 622–623, 432 A.2d 446, 449–450 (1981).

Consequently, in an action under the Post Conviction Procedure Act, the nature of the issue presented will ordinarily determine the applicability of § 7–106(b) and (c). For example, waiver of a claim that trial counsel's representation was so inadequate that the defendant was denied his constitutional right to the assistance of counsel requires an "intelligent and knowing waiver" by the defendant; accordingly, the waiver provisions of the Post Conviction Procedure Act are applicable. *Curtis v. State, supra*, 284 Md. at 150–151, 395 A.2d at 474–475, and cases there cited. On the other hand, waiver with respect to most issues does not require "intelligent and knowing" action by the defendant, and, with regard to those issues, the waiver provisions of the Post Conviction Procedure Act are not directly applicable. Some Post Conviction Procedure Act cases present both types of issues, *i.e.*, issues governed by the Act's waiver provisions and issues that are not strictly governed by the statutory provisions. *See, e.g., Oken v. State*, 343 Md. 256, 681 A.2d 30 (1996), *cert. denied*, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Davis v. State*, 285 Md. 19, 400 A.2d 406 (1979). It should also be noted, however, that some of this Court's opinions have not always drawn an explicit distinction between the applicability of the Act's waiver section and the circumstances when that section does not apply.

Ordinarily, as the majority points out, a challenge to a jury instruction is not covered by the waiver provision contained in § 7–106(b) of the Post Conviction Procedure Act; instead, the failure at trial to object to a jury instruction normally constitutes a waiver of any challenge to the instruction. *See Walker v. State, supra*, 343 Md. at 645–646, 684 A.2d at 437. For example, *Davis v. State, supra*, 285 Md. at 32–37, 400 A.2d at 412–414, involved a concededly erroneous jury instruction that

relieved the prosecution of its burden of proving criminal agency beyond a reasonable doubt. Even though the reasonable doubt standard reflects a fundamental constitutional right, the Court in *Davis* held that, in light of *Curtis,* the waiver section of the Post Conviction Procedure Act "is not applicable to the advisory jury instruction here." *Davis,* 285 Md. at 33, 400 A.2d at 413. *See, e.g., State v. Rose,* 345 Md. 238, 243–250, 691 A.2d 1314, 1316–1320 (1997) (The issue concerned a Post Conviction Procedure Act challenge to the "reasonable doubt" jury instruction at the defendant's trial, which was not objected to, and the Court held that the error had been waived by the failure to object); *Hunt v. State, supra,* 345 Md. at 132–139, 149–152, 691 A.2d at 1260–1263, 1268–1269 (same).[3]

In cases not governed by § 7–106(b) of the Post Conviction Procedure Act, the provision in § 7–106(b)(1)(ii), excusing a waiver if "special circumstances" exist, does not directly apply. Moreover, the "plain error" concept under Maryland Rule 8–131(a), applicable in direct appeals from criminal judgments, does not technically apply in post conviction actions. *Walker*

---

**3.** The majority opinion in the present case takes the position that "fundamental constitutional rights" require a "knowing and intelligent waiver" by the defendant personally, whereas "[n]on-fundamental rights" do not require such a waiver. (Majority opinion at 262, 958 A.2d at 309). The majority states that an erroneous jury instruction on reasonable doubt is not a "fundamental right" and, therefore, it may be waived by a failure to object (*Id.* at 263, 958 A.2d at 309). In the middle of its discussion of this matter, however, the majority, somewhat inconsistently, quotes *State v. Rose,* 345 Md. 238, 248, 691 A.2d 1314, 1319 (1997), " 'that, simply because an asserted right is derived from the Constitution ... or is regarded as a "fundamental" right, does not necessarily make the "intelligent and knowing" standard of waiver applicable.' " (*Id.* at 263, 958 A.22d at 309). The quotation from *Rose* correctly sets forth Maryland law. The majority's fundamental/non-fundamental dichotomy is not correct. The standard is whether "a defendant's claim does encompass that narrow band of rights that courts have traditionally required [that] an individual knowingly and intelligently relinquish or abandon in order to waive the right or claim." *Hunt v. State,* 345 Md. at 138, 691 A.2d at 1262. The inquiry is whether the right involved falls within that limited category of rights, with regard to which "courts traditionally have required that a person intelligently and knowingly relinquish or abandon ... before he or she

*v. State, supra,* 343 Md. at 647–648, 684 A.2d at 438. Nevertheless, our post conviction cases have excused waivers when circumstances have justified the application of a "plain error" concept. *See, e.g., Hunt v. State, supra,* 345 Md. at 139, 691 A.2d at 1263 (In a post conviction action, we stated that "the Court may review otherwise unpreserved issues under the discretion granted by Maryland Rule 8–131"); *Oken v. State, supra,* 343 Md. at 273, 681 A.2d at 38 (A post conviction action in which we held: "Under Maryland Rule 8–131, this Court retains discretion to excuse a waiver"); *Walker v. State, supra,* 343 Md. at 647–648, 684 A.2d at 438 ("[T]his Court has taken the position that a court, in a post conviction proceeding, can excuse a waiver based upon an earlier procedural default if the circumstances warrant such action").[4]

---

is deemed to have waived the right." *Walker v. State,* 343 Md. 629, 642, 684 A.2d 429, 435 (1996).

4. The majority opinion, in discussing the principle that a court in a Post Conviction Procedure Act proceeding has discretion to excuse a waiver, asserts that the court may consider the prejudice to the State in light of the delay between the accused's conviction and the filing of a post conviction action. The majority in effect says that, in a proceeding under the Maryland Post Conviction Procedure Act, laches is applicable in the exercise of discretion to excuse a waiver. For reasons hereafter set forth, there is no waiver in the present case, and, consequently, there is no waiver to excuse. Nevertheless, I do question the applicability of laches to a proceeding under the Maryland Post Conviction Procedure Act. The General Assembly has enacted numerous exceptions and limitations to the Post Conviction Procedure Act, many of which have been enacted recently. The General Assembly has not, however, enacted a laches provision. It is a sound principle that where an enactment contains numerous exceptions or limitations, courts should not insert additional ones. *See* the cases cited in footnote 16, *infra.*

With respect to both the federal habeas corpus statute and many post conviction or habeas corpus statutes in other states, laches is embodied in the statutes or in applicable rules. In this regard, the Maryland statute differs from those statutes and rules. Absent a statutory or rule provision, the concept of laches is inapplicable in a post conviction proceeding. *See, e.g., Chessman v. Teets,* 354 U.S. 156, 165, 77 S.Ct. 1127, 1132, 1 L.Ed.2d 1253, 1260 (1957) "[T]he overriding responsibility of this Court is to the Constitution of the United States, no matter how late it may be that a violation of the Constitution is found to exist"); *Herman v. Claudy,* 350 U.S. 116, 123, 76 S.Ct. 223, 227, 100 L.Ed. 126, 132 (1956) (After reviewing cases involving long periods of time between convictions and the filing of post conviction actions, including 18 years in one case, the Court stated: "The sound premise upon which these holdings rested is that men incarcerated in flagrant violation of their constitutional rights have a remedy"); *United States v.*

There is one situation where the defendant's failure to object to a jury instruction at trial, or failure otherwise to preserve an issue at trial, is *not* a waiver for purposes of a Maryland Post Conviction Procedure Act proceeding or other post-trial proceeding. That situation is set forth in § 7–106(c)(2) of the Post Conviction Procedure Act which states:

"(2) Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:

(i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and

(ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence."

When this principle is applicable, a failure to preserve an issue at trial does not constitute a waiver, and, consequently, a court's discretion to excuse a waiver is not involved. Moreover, under this Court's opinions, the principle embodied in § 7–106(c)(2) not only applies to cases directly governed by § 7–106(b) of the Post Conviction Procedure Act, but applies to Post Conviction Procedure Act proceedings not governed by § 7–106(b), as well as other types of post-trial proceedings.

For example, *State v. Colvin*, 314 Md. 1, 24–26, 548 A.2d 506, 517–518 (1988), was a post conviction proceeding involving a challenge to the jury instructions and verdict form submitted to the jury in a capital case. Since waiver of jury instructions does not require knowing and intelligent action by the defendant, the *Colvin* Post Conviction Act proceeding was not directly governed by the waiver provision now in § 7–106(b) of the statute. The defendant Colvin had failed to object to the

---

*Smith,* 331 U.S. 469, 475, 67 S.Ct. 1330, 1333, 91 L.Ed. 1610, 1614 (1947) ("[H]abeas corpus provides a remedy for jurisdictional and constitutional errors at the trial, without limit of time").

jury instructions and the verdict form at his trial. Subsequent to Colvin's trial, the Supreme Court in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), held that similar instructions and a similar verdict form were constitutionally defective. This Court, in Colvin's post conviction proceeding, held that *Mills* imposed a new standard and, because it affected the integrity of the fact-finding process, the new standard applied retroactively. The Court concluded (314 Md. at 25, 548 A.2d at 518): "Consequently, Colvin–El's death sentence *must* be vacated" (emphasis added).[5]

---

**5.** The majority opinion in the present case does not discuss this portion of the *Colvin* case. Instead, the majority discusses that part of *Colvin* dealing with the trial judge's instructions that the jury is the judge of the law. The majority states that *Colvin* is "directly on point," and quotes a selected portion of the *Colvin* opinion stating that the defendant had waived any challenge to the jury instructions concerning the advisory nature of the judge's instructions. (Majority opinion at 265, 958 A.2d at 311.) The full quotation from *Colvin,* however, shows that the jury instruction there was in accord with the *Stevenson* and *Montgomery* re-draft of the Maryland Constitutional provision. The Court stated in *Colvin,* 314 Md. at 22–23, 548 A.2d at 516–517, as follows:

"When submitting guilt or innocence to the jury, the trial court instructed that Art. 23 of the Maryland Declaration of Rights made the jury the judge of the law, and that as a result the court's instructions were advisory only and not binding. In conformance with *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), however, the court went on to instruct that the jury was to perform its role as a judge of the law only where there was a suggested conflict. Further, the court instructed that on the constitutional precepts such as burden of proof and need for unanimity, its instructions were binding and could not be disregarded. Colvin–El, citing *Giaccio v. Pennsylvania,* 382 U.S. 399, 403, 86 S.Ct. 518, 521, 15 L.Ed.2d 447, 450 (1966), contends that he was thereby deprived of due process because he was not tried in accordance with the law of the land and because the instruction was confusing. He also criticizes the reasonable doubt instruction.

"There were no exceptions taken to these instructions. On direct appeal when Colvin–El was represented by new counsel, the points were not presented. Under Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 645A(c), part of the Post Conviction Procedure Act, failure to make the allegations is presumed to have been done intelligently and knowingly. Nothing is presented here to rebut the presumption.

"To the extent that Colvin–El rests his ineffectiveness of counsel argument on the absence of any exceptions to these instructions, we find neither deficient representation nor prejudice in light of the instructions, taken as a whole."

In *State v. Evans,* 278 Md. 197, 199, 362 A.2d 629, 631 (1976), a homicide case, the defendant Evans at his trial did not object to a jury instruction "that the accused had the burden of 'showing the elements which would reduce the crime to manslaughter or which would make the homicide justifiable and excusable.'" After Evans's conviction of second degree murder and during the pendency of appellate proceedings, the United States Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), held, *inter alia,* that such a jury instruction violated due process principles. This Court in *Evans,* 278 Md. at 210, 362 A.2d at 637, held "that *Mullaney,* involving as it does the integrity of the fact-finding function, must be given full retroactive effect in view of our recent decision in *Wiggins v. State,* 275 Md. 689, 344 A.2d 80 (1975)." Even though the case was not covered by the Post Conviction Procedure Act, the Court, in an opinion by Chief Judge Murphy, utilized the Post Conviction Procedure Act in determining that the Court of Special Appeals' reversal of the conviction was justified (278 Md. at 211, 362 A.2d at 637):

"Under the Post Conviction Procedure Act, ... no error is deemed to have been waived in a case where a decision of the Supreme Court subsequently imposes upon State criminal proceedings 'a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.' Undoubtedly, the court in *Evans* considered that the *Mullaney* errors were subject to collateral attack under this section in any event, and proceeded to recognize them on its own motion...."

Numerous other cases, applying the principle of the *Evans* case, have held that the failure to raise an issue at trial did not constitute a waiver when there was a relevant post-trial Supreme Court or Maryland Court of Appeals ruling changing the legal standard concerning the issue, or have held that the

---

If the jury instruction at Adams's trial had been like the jury instruction discussed above, this case would probably not be here.

previous failure to raise the issue amounted to a waiver when the subsequent Supreme Court or Court of Appeals ruling did not change the legal standard. *See, e.g., Hunt v. State, supra,* 345 Md. at 151–152, 691 A.2d at 1269–1270 (Defendant's previous failure to challenge the trial court's "reasonable doubt" instruction constituted a waiver because the post-trial case relied upon by *Hunt* "did not alter existing case law"); *Walker v. State, supra,* 343 Md. at 637–640, 684 A.2d at 433–434 (The lack of an objection to the trial court's instruction concerning an element of the offense charged was a waiver because the post-trial Court of Appeals opinion relied upon did not modify existing law); *Oken v. State, supra,* 343 Md. at 272–274, 681 A.2d at 37–38; *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977) (Although the Supreme Court opinion changing the applicable legal standard regarding an issue was filed four days before the defendant's trial, this Court held that the modification in the legal standard was a ground for excusing the failure to raise the issue). *See also Franklin v. State,* 319 Md. 116, 571 A.2d 1208 (1990); *Hays and Wainwright v. State,* 240 Md. 482, 214 A.2d 573 (1965).

The dispositive issues in the case at bar are whether the opinions in *Stevenson* and *Montgomery* substantially changed the prior interpretation of the constitutional provision that juries are the judges of the law in criminal cases and, if they did change the law, whether they are retroactive. Since both questions should be answered in the affirmative, the judgments below ought to be affirmed.[6]

---

**6.** The majority asserts (opinion at 260, 958 A.2d at 307–308, n. 16) that an argument under § 7–106(c) of the Post Conviction Procedure Act, dealing with a new procedural or substantive standard, "is not properly before this Court" because Adams "attempts to adopt" the argument from an amicus brief, and Maryland Rule 8–503(f) "only permits litigants to adopt the arguments of other parties to the litigation."

This procedural argument is devoid of merit for several reasons. As previously discussed, § 7–106(b) and (c) are not directly applicable to this case. Even if § 7–106(c) were controlling, Rule 8–503(f) does not preclude the adoption of an argument from an amicus brief. The Rule simply does not address an amicus brief or whether a party may adopt an argument from an amicus brief. The majority cites no case holding that a party may not adopt an argument from an amicus brief.

### III.

*Stevenson v. State and Montgomery v. State* clearly established a new legal standard. The majority opinion in *Stevenson,* 289 Md. at 178, 423 A.2d at 564, held that the jury's "authority" under the first paragraph of Article 23 of the Maryland Declaration of Rights

"is *limited* to deciding 'the law of the crime,' *Wheeler v. The State,* 42 Md. 563, 570 (1875), or the 'definition of the crime,' as well as 'the legal effect of the evidence before [the jury],' *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045 (1889)." (Emphasis added).[7]

---

Furthermore, § 7–106(c) of the Post Conviction Procedure Act is not a "stand alone" section of the statute dealing with a separate issue. Instead, it is an integral part of the waiver provision, delineating an exception to § 7–106(b).

Most importantly, the majority's argument overlooks the facts that the State was the appellant in the Court of Special Appeals and is the petitioner in this Court. It was not incumbent upon Adams, as appellee and respondent, to raise any particular issues. Under Maryland Rule 8–131(b), the State's certiorari petition determines the issues in this Court. The State's petition raised the overall "waiver" question and specifically addressed § 7–106(c), arguing that the Court of Special Appeals' opinion was "simply wrong" in relying upon § 7–106(c). (Petition for certiorari at 8, 11, 13 *et seq.*).

Moreover, the majority's procedural argument is inconsistent with the settled " 'principle that a judgment will ordinarily be affirmed on any ground adequately shown by the record, whether or not relied on by the trial court or raised by a party,' " *Abrams v. Lamone,* 398 Md. 146, 161 n. 19, 919 A.2d 1223, 1231 n. 19 (2007). *See, e.g., Rush v. State,* 403 Md. 68, 103, 939 A.2d 689, 709 (2008); *YIVO Institute v. Zaleski,* 386 Md. 654, 663, 874 A.2d 411 (2005); *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 68–69, 825 A.2d 388, 393 (2003); *Robeson v. State,* 285 Md. 498, 501–502, 403 A.2d 1221, 1223 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Finally, the Court of Special Appeals' decision in this case was, to a large extent, grounded on the principle that, after Adams's trial, a new standard was imposed on Maryland criminal proceedings and the new standard affected Adams's conviction. While *Jenkins v. Hutchinson,* 221 F.3d 679 (4th Cir.2000), may have played a major role in the Court of Special Appeals' determination of a new standard, the principle applied is the same one embodied in § 7–106(c) and in opinions of this Court such as *State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976).

7. Contrary to the above quotation from *Stevenson,* neither the *Wheeler* case nor the *Beard* case held that the jury is "limited" to deciding these matters. Neither opinion used the word "limited." *Wheeler* merely

The *Stevenson* opinion, 289 Md. at 179, 423 A.2d at 565, went on to state that the pre-*Stevenson* "decisions of this Court limiting the jury's judicial role to the 'law of the crime' is a recognition that all other legal issues are for the judge alone to decide." The *Stevenson* majority held that, because of the jury's very limited role in determining the law, Article 23 of the Declaration of Rights did not violate the United States Constitution.

In the case at bar, the majority reaffirms the *Stevenson* theory, namely that this Court's opinions prior to *Stevenson* limited the jury's role under the first paragraph of Article 23 to deciding the "law of the crime." Underlying various arguments made by the majority today are the repeated assertions that the "holdings in *Stevenson* and *Montgomery* . . . did not announce new law" (majority opinion at 257, 958 A.2d at 305), that *Stevenson* " 'merely clarified what has always been the law in Maryland' " (*id.* at 257, 958 A.2d at 305), that "*Stevenson* did not announce a new rule" (*id.* at 257, 958 A.2d at 306), that a pre-*Stevenson* objection by Adams to the advisory nature of the jury instructions would not have been "novel, under . . . Maryland . . . law" (*id.* at 274, 257, 958 A.2d at 316), that "*Stevenson* merely articulated what had been implied for decades in the holdings of the Court of Appeals . . ." (*id.* at 274, 958 A.2d at 316), etc.

The above-quoted assertions by the *Stevenson* majority and the majority today are flatly erroneous. None of the pre-*Stevenson* opinions of this Court, cited by either the *Stevenson* majority or the majority today, and no other pre-*Stevenson* opinions of this Court which have come to my attention,

---

stated that the jury is entitled to decide the "law of the crime." The only "exception" to the jury's authority to decide the law in criminal cases, mentioned by the Court in *Wheeler*, related to the admissibility of evidence. The *Beard* opinion, after pointing out that the jury is entitled to decide the legal effect of evidence, continued by stating that the trial judge "can *only* bind and conclude the jury as to what evidence" shall be admitted, 71 Md. at 280, 17 A. at 1045 (emphasis added). The opinions in both *Wheeler* and *Beard* took the position that the jury's right to decide the law in criminal cases was broad, with the only exception being the rulings on admissibility of evidence.

support the proposition that the jury's right to decide the law in criminal cases is limited to the "law of the crime" and the "legal effect of the evidence." [8] What the *Stevenson* majority did, and what the present majority re-affirms, is to take the phrases "law of the crime" and "legal effect of the evidence" out of context from pre-*Stevenson* opinions, and then insert the phrase "limited to" or similar language which never appeared in the pre-*Stevenson* opinions. No opinion of this Court prior to 1980 ever suggested or intimated that the constitutional provision was limited to the "law of the crime" and the "legal effect of the evidence." On the contrary, this Court's pre-*Stevenson* opinions demonstrate that juries in criminal cases had a broad role in determining the law, with the only two exceptions being the constitutionality of a federal or Maryland statute and rulings on the admissibility of evidence. More specifically, cases in this Court prior to *Stevenson* took the position that "presumption of innocence" and "reasonable doubt" instructions were only "advisory."

Those who purport to see, in this Court's pre-*Stevenson* opinions, a very limited role for juries as judges of the law in criminal cases, remind me of the crowd (with the exception of one child) who purported to see and admire the Emperor's new clothes, although they knew better, in the story by Hans Christian Andersen. No rational person examining this Court's opinions prior to the date *Stevenson* was filed (December 17, 1980), can see more than two exceptions to the constitutional provision making juries the judges of the law in criminal cases.

---

**8.** This Court has never explained what legal issues precisely fall within the phrases "law of the crime" and "legal effect of the evidence." Literally, the phrases could encompass a broad range of legal issues. The *Stevenson* opinion, 289 Md. at 177–181, 423 A.2d at 563–566, largely defined its view regarding the scope of Article 23 by listing particular legal issues which fell outside of the jury's authority. *Stevenson* and *Montgomery* implied, however, that the scope of Article 23 is very narrow. Whatever the phrases "law of the crime" and "legal effect of the evidence" may encompass, I shall assume that the scope of Article 23, as a result of the *Stevenson* re-draft, is narrow.

### A.

The constitutional provision, stating that juries are the judges of the law in criminal cases, was initially adopted as part of the Maryland Constitution of 1851. The first case discussing the provision, in dicta, was *Franklin v. State,* 12 Md. 236 (1858). The conviction in *Franklin* was reversed because of a defective indictment. Justice Bartol delivered the opinion of the Court (12 Md. at 249–250), which agreed in dicta with a concurring opinion by Chief Justice LeGrand (12 Md. at 246) that the constitutional provision making juries the "judges of the law" in criminal cases did not authorize the jury to decide "the constitutionality of an Act of Congress or of the State Legislature." [9] The *Franklin* opinion did not discuss or recognize any other exception to the constitutional provision that juries are the judges of the law in criminal trials.

The next opinion discussing the constitutional provision authorizing juries to decide the law in criminal cases was *Wheeler v. State, supra,* 42 Md. at 570. As earlier noted, *supra* n. 7, *Wheeler* and *Beard v. State, supra,* 71 Md. at 280, 17 A. at 1045, took the position that the jury's authority did not extend to the trial judge's rulings on the admissibility of evidence. This was the only exception to the constitutional provision mentioned by either opinion. In fact, Chief Judge Alvey for the Court in *Beard,* 71 Md. at 279–280, 17 A. at 1045, emphasized that, when a trial judge decided that it was appropriate to instruct the jury, "it has always been deemed necessary that he [or she] should be careful to put the instruction in an advisory form, so that the jury be left entirely free to find their verdict in accordance with their own judgment of the law, as well as the facts."

---

**9.** The Constitution of 1851, for the first time in Maryland history, designated the judges of this Court as the "Chief Justice" and "Associate Justices." This designation was repeated in the Constitution of 1864. In the Constitution of 1867, however, which is still in effect, the words "Justice" and "Associate" were abandoned, and the Judges of this Court were referred to simply as "Judges." The only Maryland Judges who are constitutionally designated as "Associate Judges" are Judges of the Circuit Courts other than the Chief Judges of each circuit. *See* Article IV, § 21(c), of the Maryland Constitution.

Between 1858, when *Franklin v. State, supra,* was decided, until December 17, 1980, when *Stevenson* was decided, the opinions of this Court recognized no more than two exceptions to the constitutional mandate that juries were the judges of the law in criminal cases. Some of this Court's opinions discussing the constitutional provision failed to mention any exception.[10] A number of opinions recognized that a ruling on the constitutionality of an Act of Congress or of an Act of the Maryland General Assembly constituted an exception.[11] Sev-

---

**10.** *See Dillon v. State,* 277 Md. 571, 357 A.2d 360 (1976); *Hardison v. State,* 226 Md. 53, 60–62, 172 A.2d 407, 411–412 (1961); *Brown v. State,* 222 Md. 290, 301–302, 159 A.2d 844, 850–851 (1960); *Bruce v. State,* 218 Md. 87, 97–98, 145 A.2d 428, 433–434 (1958); *Wilkerson v. State,* 171 Md. 287, 188 A. 813 (1937); *Klein v. State,* 151 Md. 484, 489–490, 135 A. 591 (1926); *Swann v. State,* 64 Md. 423, 1 A. 872 (1885); *Bell, alias Kimball v. State,* 57 Md. 108, 118–121 (1881); *Forwood v. State,* 49 Md. 531, 537 (1878).

**11.** They include *Franklin v. The State,* 12 Md. 236, 249–250 (1858) (dicta); *Esterline v. State,* 105 Md. 629, 636–637, 66 A. 269 (1907); *Slansky v. State,* 192 Md. 94, 105, 63 A.2d 599, 603 (1949); *Hopkins v. State,* 193 Md. 489, 497–498, 69 A.2d 456, 459–460 (1949), *appeal dismissed,* 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950); *Hitchcock v. State,* 213 Md. 273, 280–284, 131 A.2d 714, 718–719 (1957); *Giles v. State,* 229 Md. 370, 383, 183 A.2d 359, 365 (1962), *appeal dismissed,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963). *See also Slymer v. State,* 62 Md. 237, 241 (1884), a case relied on in the *Stevenson* opinion. *Slymer* did not discuss or cite the constitutional provision making juries the judges of the law in criminal cases, but the *Slymer* opinion did hold that the validity of an Act of the General Assembly was for the court to decide.

Today's majority opinion, citing the *Giles, Hitchcock* and *Franklin* cases, states that "[q]uestions of law of a constitutional nature were always off limits to the jury." (Opinion at 275, 958 A.2d at 317). This statement by the majority is inaccurate. The exception recognized by these cases was the constitutionality of a statute enacted by Congress or by the Maryland General Assembly. No pre-*Stevenson* case made an exception for other types of constitutional issues.

*Hitchcock,* written by Judge (later Chief Judge) Hammond for the Court, took the position, inter alia, that the voters' ratifications of the Constitutions of 1864 and 1867, containing the same language that was construed in *Franklin,* in effect constitutionalized the dicta in *Franklin.* Judge Hammond explained (213 Md. at 283–284, 131 A.2d at 719):

"The very words that now appear in the Constitution of 1851, and were proposed to the people and ratified by them as part of the Constitutions of 1864 and of 1867. On familiar principles, we think, that when the constitutional convention proposed and the

eral opinions by this Court indicated that a ruling on the admissibility of evidence was an exception to the constitutional provision, without mentioning any other exception.[12] There appear to be only two pre-*Stevenson* opinions of this Court which recognize both of the above-mentioned exceptions,[13] and one opinion which stated that there is just "one exception" without specifying what the exception is.[14]

---

people adopted what is now Art. XV, § 5 of the Constitution of 1867, [subsequently placed in Article 23 of the Declaration of Rights,] they must be deemed to have accepted and used the words as meaning what the Court of Appeals said in 1858 they meant. Where a constitutional provision has received a judicial construction and then is incorporated into a new or revised constitution, it will be presumed to have been re-adopted with the knowledge of the previous construction and to have been intended to have the meaning given it by that construction."

In light of the principle set forth in the above quotation, it seems clear that the "constitutional" exception in Article 23 is limited to the constitutionality of Acts of Congress or of the Maryland General Assembly.

12. Cases recognizing the admissibility of evidence as the only exception include *Lewis v. State*, 285 Md. 705, 723–724, 404 A.2d 1073, 1083 (1979); *Jackson v. State*, 180 Md. 658, 664, 26 A.2d 815, 818 (1942); *Dick v. State*, 107 Md. 11, 17–18, 68 A. 286, 288 (1907); *Beard v. State*, *supra*, 71 Md. at 280, 17 A. at 1045; *Bloomer v. State*, 48 Md. 521, 539 (1878); *Broll v. State*, 45 Md. 356, 360 (1876); *Wheeler v. State*, *supra*, 42 Md. at 570. In a sense, the admissibility of evidence is not really an "exception" to the jury being the judge of the law. The function of the jury in deciding what the law is occurs after the evidentiary portion of the trial. That function does not begin until the case is submitted to the jury. Rulings on the admissibility of evidence, however, are normally earlier, during the evidentiary portion of the trial.

The same analysis would be applicable to a court's ruling on a preliminary question of subject matter jurisdiction. *See Kelly v. State*, 151 Md. 87, 98–99, 133 A. 899 (1926) ("The right of the court to try a cause is wholly distinct from the law and facts necessary to the commission of a crime"). Subject matter jurisdiction was not called an "exception" in either the *Kelly* case or in any other pre-*Stevenson* opinion of this Court. Jurisdiction does not concern the relationship between the trial judge and the jury as to legal rulings. If a court lacks subject matter jurisdiction, its legal determinations will be a nullity whether they are made by a judge or a jury.

13. *Wilson v. State*, 239 Md. 245, 254, 210 A.2d 824, 827 (1965); *Giles v. State*, *supra*, 229 Md. at 383, 183 A.2d at 365.

14. *Schanker v. State*, 208 Md. 15, 20–21, 116 A.2d 363, 366 (1955) (The "jury ... under ... the Constitution of Maryland (with one exception

B.

Not only do the pre-*Stevenson* opinions of this Court recognize just two exceptions to the constitutional mandate contained in the first paragraph of Article 23, but, as previously noted, the pre-*Stevenson* opinions repeatedly indicate that the constitutional mandate is extremely broad. Thus in *Dillon v. State*, 277 Md. 571, 580, 357 A.2d 360, 366 (1976), Judge O'Donnell for the Court explained (emphasis in original):

> "Under 'our almost unique Constitutional provision any instructions on the law which the [trial] court may give' are purely advisory and the jury must be so informed. *Schanker v. State*, 208 Md. 15, 21, 116 A.2d 363, 366 (1955). As observed in *Jackson v. State*, 180 Md. 658, 667, 26 A.2d 815, 819 (1942), '[t]he judge may tell [the jury] what he thinks the law is, but he must tell them it is merely advisory and they are not bound to follow it. . . .'

> \* \* \*

> "Our predecessors in *Slansky v. State*, 192 Md. 94, 63 A.2d 599 (1949), pointed out that a trial judge, in instructing in a criminal case, 'should be careful to couch the instruction in an advisory form, so that the jury are left free to find their verdict in accordance with their own judgment of the law as well as the facts. When such an instruction is given, it goes to the jury simply *as a means of enlightenment*, and not, as in civil cases, as a binding rule for their government. *Broll v. State*, 45 Md. 356 [ (1876) ]; *Swann v. State*, 64 Md. 423, 1 A. 872 [ (1885) ]; *Dick v. State*, 107 Md. 11, 68 A. 286, 576 [ (1907) ].' "

For a sampling of other opinions to the same effect, *see, e.g., Bruce v. State*, 218 Md. 87, 97, 145 A.2d 428, 433 (1958) (An "instruction on *every* essential question or point of law" is an

---

not here involved) is the judge of the law as well as of the facts in criminal cases. . . ." \* \* \* Furthermore, "[u]nder our almost unique constitutional provision any instructions on the law which the court may give (subject to one exception already mentioned) are purely advisory and the court must so inform the jury").

"advisory" instruction) (emphasis added); *Vogel v. State*, 163 Md. 267, 274, 162 A. 705, 707 (1932) (" '[I]t is too well settled in this State to require the production of authority that the judge may state his own views of the law to the jury, provided he also informs them that his utterance is advisory only, and that they are free to adopt their own independent judgment,' " quoting *Dick v. State*, 107 Md. 11, 19, 68 A. 286, 289 (1907)); *Esterline v. State*, 105 Md. 629, 636, 66 A. 269, 272 (1907) ("Such instructions as [the trial court] may give are *merely advisory*, and may be disregarded by the jury") (emphasis in original); *Beard v. State, supra*, 71 Md. at 279–280, 17 A. 1044 ("Whenever, however, the judge has thought it proper to instruct, it has always been deemed necessary that he should be careful to put the instruction in an advisory form, so that the jury be left *entirely free* to find their verdict in accordance with their own judgment of the law, as well as the facts") (emphasis added); *Forwood v. State*, 49 Md. 531, 537 (1878) ("[I]n criminal cases, [the jurors] being judges of law and of the facts, they were not bound by *any* instructions of the court, but were only to give such instruction such weight as in their judgment they saw proper") (emphasis added); *Bloomer v. The State*, 48 Md. 521, 539 (1878) (" 'The jury then, being judges of law, as well as of fact in criminal cases, would not be bound by *any* instructions given by the court, but would be at *perfect liberty to utterly disregard them* and find a verdict in direct opposition to them' ") (emphasis added); *Broll v. The State*, 45 Md. 356, 359 (1876) (With regard to Ch. 316 of the Act of 1872, authorizing exceptions in criminal cases, the Court stated: "That Act can only apply to such rulings as the court may be called upon to make with regard to the admissibility of evidence during the trial. It is impossible that the Legislature contemplated giving the right to parties in criminal cases to have instructions upon the law and the legal effect of evidence, and exceptions to such rulings, in the face of the constitutional provision under which juries are at liberty to treat such instructions with utter disregard, and to find their verdict in direct opposition to them").

## C.

Moreover, the cases in this Court prior to 1980, all holding that juries in criminal cases had the authority to decide almost all legal issues, included cases involving constitutional rights. In 1979, the year before *Stevenson* was decided, this Court in *Davis v. State, supra,* 285 Md. at 24–31, 400 A.2d at 408–412, an action under the Post Conviction Procedure Act, considered a jury instruction which erroneously placed the burden of proof upon the defendant with respect to "alibi." The Court held in *Davis* that the jury instruction violated the Due Process Clause of the Fourteenth Amendment but that the violation was waived by the defendant's failure at his trial to object to the erroneous instruction.[15] It is significant, however, that the Court's opinion referred "to the *advisory* jury instruction here," *Davis,* 285 Md. at 33, 400 A.2d at 413 (emphasis added).

In *Bruce v. State, supra,* 218 Md. at 97–98, 145 A.2d at 433–434, after stating that, "when requested in a criminal case," the trial court should "give an *advisory* instruction on *every* essential question or point of law," this Court decided that the trial "court properly *advised* the jury [that] the defendant is '*presumed to be innocent* until proven guilty *beyond a reasonable doubt,* and that presumption attends him throughout the trial until overcome by proof establishing his guilt *beyond a reasonable doubt* and to a moral certainty.'" (Emphasis added). . .

Similarly, in *Klein v. State,* 151 Md. 484, 489, 135 A. 591, 593 (1926), this Court, upholding the criminal conviction, set forth with apparent approval part of the trial judge's instructions as follows (emphasis added):

> "It seems that the jury which heard the case had been engaged in the trial of civil cases, and after the jury was sworn, but before anything further was done, the court undertook to advise the jury of some of the differences

---

**15.** For a detailed discussion of the unconstitutional jury instruction in Davis, *see State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975).

between their duties in a criminal case and in a civil case in Maryland. He called their attention to the *presumption of innocence* which surrounds the accused in a criminal case, discussed the degree of proof needed for a conviction, gave an explanation of *the doctrine of reasonable doubt,* told them several times that they were the judges of both the law and the facts in a criminal case, and concluded with the statement that *all he had told them was merely advisory and that the jury, being judges of both the law and the facts, were not bound by what he had said."*

The *Klein* opinion went on to reiterate that "juries in criminal cases are the judges of both the law and the facts, and hence the court cannot give them binding instructions in such cases." 151 Md. at 489, 135 A. at 594.

The Court in *Wilson v. State,* 239 Md. 245, 210 A.2d 824 (1965), reversed a conviction and remanded the case for a new trial because the trial judge would not allow defense counsel to argue to the jury search and seizure law and the law of arrest. Judge Sybert for the Court explained (239 Md. at 254, 210 A.2d at 828):

"We think the judgment must be reversed because the trial judge erred when he prevented defense counsel from arguing to the jury the questions whether the appellant had voluntarily consented to the searches and seizures, or whether his apparent acquiescence had been induced by an unlawful arrest. Whether these were questions of law or of fact, or a combination of both, they were within the domain of the jury and counsel was entitled to discuss the facts relative thereto and inform the jury of the applicable law.

"Under our almost unique constitutional provision, the jury is the judge of the law as well as of the facts in criminal cases."

A criminal conviction was reversed in *Wilkerson v. State,* 171 Md. 287, 188 A. 813 (1937), because the trial judge would not allow defense counsel to argue a principle of self-incrimination law to the jury. This Court stated (171 Md. at 289, 188 A. at 814):

> "[Defense] counsel, during the course of his argument to the jury, made the statement that, 'No presumption of guilt arose from the fact that traverser failed to take the witness stand,' whereupon the State's Attorney objected to the statement and was sustained by the court, who also remarked that it was 'not proper for counsel to comment in any way on the failure of the defendant to take the witness stand.' The court's action, of course, prevented traverser's counsel from stating to the jury the law applicable to the situation under consideration, notwithstanding ... the Maryland Constitution, which provides, 'in the trial of all criminal cases, the jury shall be the Judges of Law, as well as of fact.' "

The *Wilkerson* opinion continued (171 Md. at 290, 188 A. at 814):

> "Since, therefore, by constitutional provision the jurors are made the judges of law as well as of fact, it is difficult to understand how they are to know the law in any particular case if counsel are to be denied the privilege of stating it to them, for the court will take judicial knowledge of the fact that most jurors are laymen, and therefore do not possess knowledge of the law."

*See also Wilson v. State, supra,* 239 Md. at 255–256, 210 A.2d at 829.

Another legal issue implicating federal constitutional rights was held to be for the jury prior to 1950. A 1950 state constitutional amendment added the following language to the provision making juries the judges of the law in criminal cases: "except that the Court may pass upon the sufficiency of the evidence." Before 1950, this Court took the position that the sufficiency of the evidence was for the jury. It was held that not even the Court of Appeals could "pass upon ... the sufficiency of evidence to establish the crime charged." *Slansky v. State,* 192 Md. 94, 109, 63 A.2d 599, 606 (1949). *See Dick v. State,* 107 Md. 11, 17, 68 A. 286, 288 (1907) ("[T]he motion to strike out the testimony of the State was in legal effect a demurrer to the evidence and an attempt to obtain an

instruction from the Court to the jury to render a verdict for the defendant, and it is well settled that this cannot be done in Maryland, where the jury in criminal cases are the judges of the law, and of the . . . legal sufficiency of the evidence, and the Court *only* determines the admissibility of the evidence.") (emphasis added) *See also Bloomer v. State, supra,* 48 Md. at 539–540.[16]

The jury's role as judge of the law in a criminal case also extended to statutory interpretation, with counsel being able "to read to the jury from a legal textbook," or "to read from opinions of the Court of Appeals," or "to refer to *nisi prius* decisions, directly relevant to the interpretation of a statute," *Dillon v. State, supra,* 277 Md. at 581, 357 A.2d at 367. The "jury 'as Judges of the Law,' is free 'to construe [a statute] and apply it according to their own judgments,' " *Dillon,* 277 Md. at 583, 357 A.2d at 368. *See Vogel v. State,* 163 Md. 267, 274, 162 A. 705, 707 (1932) (Neither the court nor the State's Attorney can " 'deprive[ ] the jury of its constitutional power to construe and interpret the statute and apply it according to their own judgments' ").

In *Dick v. State, supra,* 107 Md. at 18, 68 A. at 289, one issue concerned the interpretation of a statute making an "agent" criminally liable for certain conduct. The State's Attorney, in argument to the jurors, told them " 'that the construction of the statute, as to whether the defendant was an agent within the meaning of the statute was something

---

**16.** The 1950 constitutional amendment enacted the only exception set forth in the language of the constitutional provision making jurors the judges of the law in criminal cases. Under normal principles followed by this Court, when an enactment expressly contains an exception or exceptions, courts do not imply other exceptions. *See, e.g., BAA v. Acacia,* 400 Md. 136, 152, 929 A.2d 1, 10 (2007) (When an enactment "expressly sets forth certain exceptions . . ., this Court 'cannot disregard the mandate . . . and insert an exception, where none has been made,' " quoting *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A.2d 619, 621 (1946)); *Nasseri v. Geico,* 390 Md. 188, 198, 888 A.2d 284, 290 (2005); *Selig v. State Highway Administration,* 383 Md. 655, 672, 861 A.2d 710, 720 (2004); *Salamon v. Progressive Classic Insurance Co.,* 379 Md. 301, 311–315, 841 A.2d 858, 864–867 (2004); *Ferrero Constr. Co. v. Dennis Rourke Corp.,* 311 Md. 560, 575, 536 A.2d 1137, 1144 (1988).

they had nothing to do with, inasmuch as the Court had already determined that question in ruling upon the testimony'. . . ." This Court reversed the criminal conviction because of the State's Attorney's argument, saying (107 Md. at 19, 68 A. at 289, emphasis in original):

"We think it was clearly improper, for the State's Attorney to tell the jury that whether the defendant was an agent within the meaning of the statute was something with which they had nothing to do. It is manifest that if, as we have seen from our own decisions cited, the Court cannot pronounce and decide upon the legal effect of the evidence and can only *bind and conclude* the jury as to what evidence shall be *considered* by them, the State's Attorney cannot undertake to declare to the jury that the Court had in fact, by admitting the testimony deprived the jury of its constitutional power to construe and interpret the statute and apply it according to their own judgments. It may be apparently anomalous when the Court in passing upon the admissibility of testimony has given *its* interpretation of the meaning of the statute, that the jury should still be free to adopt *its own* interpretation; but this is precisely the anomaly resulting from our system of administering the criminal law and which results whenever the Court instructs the jury in a criminal case, and the verdict which follows is not in accord with the view expressed by the Court; and it is too well settled in this State to require the production of authority, that the Judge may state his own views of the law to the jury, provided he also informs them that his utterance is advisory only, and that they are free to adopt their own independent judgment."

Many other types of legal issues have been involved in this Court's opinions regarding the constitutional provision making juries the judges of the law in criminal cases, and, prior to 1980, such issues have been deemed to fall within the province of the juries. *See, e.g., Dillon v. State, supra,* 277 Md. at 582–583, 357 A.2d at 367–368 (It was held to be appropriate, because of the jury's constitutional role, to read to the jury the Declaration of Policy from the preamble to the Maryland

Handgun Statute, even though the Declaration "forms no part of a statute"); *Hardison v. State,* 226 Md. 53, 61–62, 172 A.2d 407, 411–412 (1961) (The trial judge, when requested, should have given the jury an "advisory instruction" defining "who, in law, are, and who are not, accomplices" and informing them of "the necessity for the corroboration of an accomplice's testimony," although the instruction to the jury should be "in an advisory manner"); *Brown v. State,* 222 Md. 290, 302, 159 A.2d 844, 850 (1960) ("Because of our constitutional provision that the jurors are the judges of the law as well as the facts in criminal cases, the juries in Maryland, in such cases, are not bound by the instructions of the trial courts, the same being only advisory in nature. We, therefore, conclude that it is permissible for counsel in argument in criminal cases to refer to the opinions of the Court of Appeals, even if the opinion be in the same case in a former appeal, insofar as they relate to questions of law, alone"); *Slansky v. State, supra,* 192 Md. at 109–111, 63 A.2d at 606 (The validity of a Nevada divorce was for the jury in a bigamy case, and the jury was entitled to determine whether "the Nevada court lacked the power to liberate [the defendant] from amenability to the laws of Maryland governing domestic relations"); *Beard v. State, supra,* 71 Md. at 279–282, 17 A. at 1045–1046 (The legal definition of a "disorderly house" is a matter for the jury); *Bloomer v. The State, supra,* 48 Md. at 539–540 (The law as to what constitutes a conspiracy is a matter for the jury).

### D.

The *Stevenson* opinion, 289 Md. at 179, 423 A.2d at 564, correctly pointed out that the admissibility of evidence was an "exception" to the provision making juries the judges of the law in criminal cases, citing, *inter alia, Lewis v. State,* 285 Md. 705, 724, 404 A.2d 1073, 1083 (1979). The majority today, however, says (Opinion at 257–258, 958 A.2d at 306, emphasis added):

"The [*Stevenson* ] majority opinion highlighted, as an example, a then recent decision applying the long established principle that the jury serves only as a judge of the *'law of the crime.'* See *Lewis v. State,* 285 Md. 705, 724, 404 A.2d

1073, 1083 (1979) (holding that instructions on the voluntariness of confessions are binding, not merely advisory, on the jury, and the jury should be instructed as such)."

The *Lewis* opinion never mentioned the phrase "law of the crime." The only "exception" recognized by *Lewis* was the long-recognized exception for the admissibility of evidence, and the admissibility issue in *Lewis* concerned the admissibility of a confession. The pertinent portion of the *Lewis* opinion reads as follows (285 Md. at 723–724, 404 A.2d at 1083, emphasis added):

"Under ... the Constitution of Maryland, implemented by Maryland Rule 757 b, a jury in a criminal trial is instructed that it is the judge of the law as well as the facts, and that the court's instructions are merely advisory. *See Dillon v. State*, 277 Md. 571, 357 A.2d 360 (1976). *An exception* to this principle is that determinations of the law governing the admissibility of evidence are within the sole domain of the trial judge, *Brady v. Maryland*, 373 U.S. 83, 89–90, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Maryland cases there discussed.

"Here, the defendant contends that by instructing the jury as to the law pertaining to the admissibility of confessions, and later telling them generally that the instructions are merely advisory, error was committed. *In light of the instructions as a whole, we are not prepared to say that reversible error was committed.* Nevertheless, we agree with the defendant that, since the jury's consideration of the voluntariness of the confession involves a delegation to it to determine the propriety of admitting this evidence, *Dempsey v. State, supra,* 277 Md. at 143–150, [355 A.2d 455 (1976)], the instructions in this regard fall within the exception discussed in *Brady* and are consequently binding upon the jury. Henceforth in all criminal cases involving the jury's consideration of the admissibility of a confession, including the instant case on retrial, appropriate instructions to this effect should be given to the jury."

As indicated above, the conviction in *Lewis* was not reversed because of the "advisory" jury instruction. The *Lewis* convic-

tion was reversed, and a new trial awarded, because of violations of the common law rules concerning the trial of accessories. *Lewis*, 285 Md. at 713–717, 404 A.2d at 1077–1079 ("[O]ur reversal in this case rests upon the common law doctrine of accessoryship"). Furthermore, to reiterate, the *Lewis* opinion recognized only "*an* exception" to the constitutional provision that juries are the judges of the law in criminal cases, namely the "exception" for rulings on the admissibility of evidence.[17]

In support of its argument that the *Stevenson* opinion did not "make new law" in its interpretation of the Maryland constitutional provision mandating that juries are the judges of the law in criminal cases, the majority quotes the United States District Court for the District of Maryland in *Jenkins v. Smith*, 38 F.Supp.2d 417, 421 (D.Md.1999), *motion to amend or alter judgment denied*, 43 F.Supp.2d 556 (D.Md. 1999), *aff'd sub nom. Jenkins v. Hutchinson*, 221 F.3d 679 (4th Cir.2000). Of course, the District Court in *Jenkins* was simply recounting how the *Stevenson* majority described the *Stevenson* opinion. What is significant, however, is that the *Jenkins* case is *factually* on point, that the United States District Court in a federal habeas corpus action granted Jenkins's habeas corpus petition, that the District Court set aside Jenkins's Maryland criminal conviction, that the District Court ordered Jenkins's immediate release unless the State of Maryland elected to retry him, and that the United States Court of Appeals for the Fourth Circuit affirmed the District Court's judgment.

Jenkins, like the respondent Adams, was convicted of various criminal offenses by a jury in the Circuit Court for Prince

---

**17.** The *Lewis* opinion, in connection with Maryland law on the admissibility and voluntariness of confessions, referred to *Dempsey v. State*, 277 Md. 134, 355 A.2d 455 (1976). As discussed in *Dempsey*, 277 Md. at 143–150, 355 A.2d at 460–464, under Maryland law, both the trial judge and the jury have roles with regard to the admissibility and voluntariness of a confession. *See also Jackson v. State*, 180 Md. 658, 666, 26 A.2d 815, 819 (1942) ("In this case the jury had the same opportunity to pass on on the admissibility of the confessions, . . . as had the court out of their presence").

George's County. His trial took place in 1975. At Jenkins's trial, like Adams's trial, the judge instructed the jury with regard to several rights guaranteed by the Due Process Clause of the Fourteenth Amendment, including the requirement that guilt must be proved beyond a reasonable doubt. Again, like the trial judge in the *Adams* case, the trial judge in the *Jenkins* case repeatedly told the jury that the judge's instructions were advisory and that the jury, as judge of the law, could disregard the instructions. As in the *Adams* case, the defendant Jenkins did not object to the advisory nature of the instructions and did not raise the issue on appeal. Nevertheless, both federal courts considered the merits of the question, and they held, *inter alia,* that Jenkins had been denied his federal constitutional rights and was entitled to relief. The United States Court of Appeals concluded (221 F.3d at 685–686):

> "Here, the trial court clearly explained at the beginning of its charge to the jury that the jury was the sole judge of the law and that the instructions given by the court were advisory only. With each individual instruction, the court reminded the jury of the advisory nature of the instructions. We conclude that there is a reasonable likelihood that the jury interpreted these instructions as allowing it to ignore the 'advice' of the court that the jury should find proof beyond a reasonable doubt. Accordingly, we conclude that the advisory instructions violated Jenkins' right to due process.

> \* \* \*

> [A]n error in an instruction that relieves the State of its burden of proof beyond a reasonable doubt can never be harmless."

The majority opinion in the instant case asserts that *Jenkins* is not "legally on point." Nonetheless, *Jenkins* could not be more precise in its legal analysis that the advisory jury instructions deprived the accused of his constitutional rights and that the accused was entitled to relief. It is noteworthy

that the Court of Special Appeals in the case at bar relied on, *inter alia,* the United State Court of Appeals' decision in *Jenkins. See State v. Adams, supra,* 171 Md.App. at 698–704, 912 A.2d at 34–37.

Judge Harrell's opinion for the Court advances other arguments for his theory that *Stevenson* was not a novel ruling and did not depart from earlier Court of Appeals cases. The arguments are not persuasive and can be briefly answered.

The majority opinion suggests that because *Stevenson* and *Montgomery* "were decided relatively contemporaneously with Adams's trial," an objection by Adams to the advisory nature of the judge's instructions would not have been "novel" under Maryland law. (Opinion at 272–273, 958 A.2d at 315 n. 28, 273–274, 958 A.2d at 315–316). Not only was Adams's trial more than a year before the *Stevenson* opinion, but his appeal and the denial of certiorari by this Court was prior to *Stevenson.* The opinion in *Lewis v. State, supra,* 285 Md. at 723–724, 404 A.2d at 1083, however, was filed about three months before Adams's trial, and *Lewis* reiterated the requirement of the Maryland Constitution and the Maryland Rules that the "jury in a criminal trial ... is the judge of the law as well as the facts, and that the court's instructions are merely advisory." As previously discussed, the only "exception" recognized in *Lewis* concerned rulings on the admissibility of evidence. One would not reasonably expect a defense attorney, just three months after the Court of Appeals' pronouncement in *Lewis,* to argue to a Maryland trial judge that the Court of Appeals was wrong in *Lewis.*

The majority opinion also argues that, because the requirements that the State prove guilt beyond a reasonable doubt and that the jury be properly instructed regarding the State's burden, were "well established at the time of Adams's trial," Adams's attorney presumably should have objected to the advisory nature of the instructions. (Opinion at 275, 958 A.2d at 317). I agree that these matters were well-established and that the trial judge, at the time of Adams's trial, should have and did instruct the jury concerning the reasonable doubt standard and the State's burden. Whether he should also

have refrained from telling the jury that these instructions were "advisory," is another matter. The Maryland Constitution, the cases in the Court of Appeals including the three most recent ones at the time (*Lewis, Davis,* and *Dillon*), and the Maryland Rules promulgated by this Court, all told the trial judge and the defense attorney in 1979 that the jury was the judge of the law and that *all* of the judge's instructions applicable to *Adams's* trial were "advisory." [18] It was not until 1980 that this Court gave Maryland trial judges a "license" to depart from the language of the Maryland Constitution and the Maryland Rules and limit the advisory nature of jury instructions to instructions concerning the "law of the crime."

Judge Harrell's opinion for the Court relies upon language in the *Dillon* opinion, 277 Md. at 581–582, 357 A.2d at 367, and an earlier Court of Special Appeals opinion, that the Maryland Constitution

"'does not confer upon [jurors], however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case.'"

There is a huge difference between *which* person or entity decides what the law is and *how* that person or entity should perform the function. Today, in Maryland criminal cases where the "law of the crime" is not an issue, as well as in civil cases, the trial judge is the person who decides what the law is. Nevertheless, in performing this function, the trial judge is similarly not authorized "to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or

---

18. Also in 1979, just months prior to Adams's trial, this Court, in an opinion by Judge J. Dudley Digges, reversed a trial court because the trial judge "violated the mandate of these rules, an action that . . . flies in the face of the established principle that the Maryland Rules are precise rubrics that are to be strictly followed . . . ." *King v. State Roads Comm'n,* 284 Md. 368, 371–372, 396 A.2d 267, 269 (1979). Judge Digges ignored this "established principle" when he authored for the majority the *Stevenson* opinion in 1980.

malevolence should dictate." *Dillon, supra,* 277 Md. at 582–582, 357 A.2d at 367. As previously discussed, the *Dillon* opinion, filed in 1976, repeatedly emphasized that " 'any instructions on the law which the [trial] court may give' are purely advisory and the jury must be so informed," that the judge " 'must tell [the jurors] it [the instruction] is merely advisory and they are not bound to follow it,' " that "[t]hese principles, so well implanted, supplied the bases for Rule 756 b, which provides that '[t]he court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and that the court's instructions are advisory only,' " that " 'the jury are left free to find their verdict in accordance with their own judgment of the law,' " etc. *Dillon,* 277 Md. at 580–581, 357 A.2d at 366.

The majority, in support of the argument that the *Stevenson* opinion was not novel and that it would have been "reasonable" for Adams's attorney in 1979 to have "object[ed] at trial to the facially advisory nature of the instruction" (Opinion at 280, 958 A.2d at 320), relies on the fact that the "advisory instruction" required by the Maryland Constitution was "the subject of vigorous debates among notable members of the Maryland Bench and Bar for several decades prior to Adams's trial." (*Id.* at 274, 958 A.2d at 319). The fact that a legal principle has been the subject of vigorous debates does not mean that the principle is tenuous, or that it is not firmly embedded in our law, or that the established principle might not be followed by a trial judge. This is particularly true when the legal principle is compelled by the unambiguous language of the Maryland Constitution. Many critics of the state constitutional provision making juries the judges of the law in criminal cases may have been advocating a proper non-judicial state constitutional amendment or a judicial holding that the state constitutional provision violated the federal constitution. There is no evidence that the critics were urging the Court of Appeals to re-draft the state constitutional provision.

Moreover, there are numerous legal principles which have been and are presently the subject of vigorous debates, and which have been criticized by notable members of the legal

profession as well as other members of society. Nonetheless, few trial lawyers would undertake to persuade a trial judge to abandon such principles, at least absent some encouragement from a recent Court of Appeals' opinion. For example, few if any other legal principles have been criticized as much as this Court's continued adherence in negligence actions to the doctrine of contributory negligence and the Court's refusal to adopt comparative negligence. *See Harrison v. Mont. Co. Bd. of Educ.*, 295 Md. 442, 456 A.2d 894 (1983). Furthermore, the doctrine of contributory negligence is a judge-made principle, and not one firmly embedded in the language of the Maryland Constitution. Should a "reasonable" lawyer in a tort trial, because the doctrine is heavily criticized, object to a contributory negligence instruction and request a comparative negligence instruction? Examples of other legal principles which are heavily criticized but which are firmly established in our law include the following: the tort immunity of local governments with regard to "governmental functions," *Austin v. City of Baltimore*, 286 Md. 51, 405 A.2d 255 (1979); the parent-child immunity rule, *Frye v. Frye*, 305 Md. 542, 505 A.2d 826 (1986); the refusal to recognize a cause of action for "educational malpractice," *Doe v. Bd. of Educ., Montgomery Co.*, 295 Md. 67, 453 A.2d 814 (1982); the continued adherence to the conflict of laws *lex loci delicti* principle, *Hauch v. Connor*, 295 Md. 120, 123–125, 453 A.2d 1207 (1983); the refusal to recognize so-called "dram shop" liability, *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981); and many other legal principles.

Criticism of a legal principle does not mean that there is a likelihood that the principle will be changed. Criticism of the constitutional mandate that juries are the judges of the law in criminal cases did not mean in 1979 that the Court of Appeals' decisions applying the constitutional provision were about to be overruled, or that a reasonable trial attorney in 1979 should have objected to the advisory nature of the trial judge's jury instructions.

### E.

As earlier discussed, the only pre-*Stevenson* substantive change in the constitutional mandate that juries are the judges

of the law in criminal cases was the 1950 constitutional amendment authorizing the court to pass upon the sufficiency of the evidence.[19] Between 1851 and 1980, there were also two procedural changes affecting the operation of the constitutional provision.

Following the 1950 constitutional amendment, this Court adopted a rule requiring a trial judge "when requested in a criminal case, to give an advisory instruction on *every* essential question or point of law supported by the evidence." *Bruce v. State, supra,* 218 Md. at 97, 145 A.2d at 433 (emphasis added). Before the adoption of this rule, the giving of any advisory instructions had been within the trial judge's discretion.

On January 1, 1950, our predecessors also adopted a rule "which expressly provides that the court's giving of advisory instructions prior to the argument of the case shall not preclude counsel from arguing to the contrary." *Schanker v. State, supra,* 208 Md. at 21–22, 116 A.2d at 367. *See also Wilson v. State, supra,* 239 Md. at 256–257, 210 A.2d at 830. Prior to this rule, when the trial judge exercised discretion to give advisory instructions and gave them before the attorneys' closing arguments, there was a conflict among this Court's opinions as to whether the attorneys could argue contrary to the judge's advisory instructions. In this situation, even though the jury was entitled to disregard the advisory instructions, several cases held that counsel could not argue contrary to the instructions. *See, e.g., Slansky v. State, supra,* 192 Md. at 107, 63 A.2d at 604–605 ("But even though an advisory instruction in a criminal case is not binding on the jury, yet * * * [w]hen an advisory instruction has been given, the judge may prevent counsel from arguing contrary to the instruction"); *Vogel v. State, supra,* 163 Md. at 272, 276, 162 A. at 707–708 (" 'But whatever powers the Constitution may have conferred upon juries in criminal cases, it has conferred none

---

**19.** For a discussion of the constitutional amendment, *see Wright v. State,* 198 Md. 163, 169–170, 81 A.2d 602, 605 (1951); *Shelton v. State,* 198 Md. 405, 411–412, 84 A.2d 76 (1951).

upon counsel.' * * * It is consistent with the right of the jury to exercise their independent judgment as to the law, in a criminal case, that they should be informed of legal theories of the prosecution or defense which may be at variance with the court's advisory instruction. On the other hand, it seems hardly compatible with the relationship of members of the bar to the court ... to permit them to combat its formal rulings in their arguments to the jury. * * * When an advisory instruction is considered necessary by the court, but is deferred until the argument to the jury is completed, the problem of protecting the jury's prerogative ... and of insuring proper respect for the authority of the court, is greatly simplified"); *Nolan v. State*, 157 Md. 332, 340, 146 A. 268, 271 (1929); *Kelly v. State*, *supra*, 151 Md. at 98–99, 133 A. at 903; *Bell, alias Kimball v. The State*, 57 Md. 108, 120 (1881).

The pre–1950 cases, prohibiting a counsel's jury argument contrary to the trial judge's instructions, are significant because both the *Stevenson* majority and the majority today cite some of these cases in support of their argument that, prior to *Stevenson*, the jury's function as judge of the law in a criminal case was quite limited. For example, the *Stevenson* opinion, 289 Md. at 178, 423 A.2d at 564, stated: "Thus, we have held that it is not within the province of the jury to decide whether a statute has been repealed, *Nolan v. State*, 157 Md. 332, 340, 146 A. 268, 271 (1929). . . ." The *Nolan* opinion did not discuss or even cite the constitutional provision making juries the judges of the law in criminal cases. Instead, the portion of the *Nolan* opinion cited in *Stevenson* "was to the refusal of the court to allow counsel for the defendant to argue to the jury that section 247 of article 27 had been repealed. . . ." *Nolan*, 157 Md. at 340, 146 A. at 271. Similarly, the majority opinion today cites (opinion at 256-57, 958 A.2d at 305) the portions of *Vogel v. State*, *supra*, 163 Md. at 272, 162 A. at 708, and *Bell, alias Kimball v. The State*, *supra*, 57 Md. at 120, which dealt with the limitation on counsel's jury argument. Both opinions drew a sharp distinction between what counsel could argue

and the jury's prerogative to disregard the court's instructions.

F.

Finally, there is strong practical evidence that, prior to *Stevenson* and *Montgomery*, the jury's role in determining the law in Maryland criminal cases was very broad, and that the *Stevenson* and *Montgomery* opinions drastically changed the function of the jury in such cases. From the inception of the constitutional provision in 1851, until the *Montgomery* opinion filed 130 years later on December 4, 1981, it appears that no decision of this Court reversed a criminal conviction on the grounds that the trial judge's instructions on particular matters should not have been "advisory" but should have been binding, or that the trial judge's instructions gave too large a scope to the constitutional provision making the jury the judge of the law in a criminal case.

On the other hand, several cases in this Court *reversed* criminal convictions because rulings in the trial courts curtailed the constitutional right of the jurors to be judges of the law in criminal cases, including the jurors' right to hear arguments on the law from counsel. *See, e.g., Wilson v. State, supra,* 239 Md. at 257, 210 A.2d at 830 ("Thus the denial of counsel's right to state the applicable law [regarding searches and seizures] to the jury was plainly prejudicial"); *Wilkerson v. State, supra,* 171 Md. 287, 188 A. 813 (Conviction reversed because a legal issue involving self-incrimination law was for the jury); *Dick v. State, supra,* 107 Md. 11, 68 A. 286 (Conviction reversed on the ground that a statutory interpretation issue was for the jury and not the court).

As previously shown, for many years jurors in criminal cases were told that all of a trial judge's instructions were advisory and that jurors could disregard them. The Rule in effect when *Stevenson* was decided, former Maryland Rule 757 b., mandated that "the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only." Rule 757 contained no exceptions. Considering this sweeping instruction regularly given to jurors in criminal cases, if, prior to *Stevenson*, the jurors' constitutional function as judges of the law were as narrow as the *Stevenson*

and *Montgomery* majorities claimed, it would be inconceivable that no criminal conviction, for 130 years, was reversed by this Court on the ground that the trial court's instruction with respect to a particular matter should have been binding.

Although the majority of this Court, from 1980 to the present, has been unwilling to acknowledge it, the truth is that *Stevenson* was a novel opinion which re-wrote what is now the first paragraph of Article 23 of the Maryland Declaration of Rights. The *Stevenson* opinion did so in an effort to salvage an invalid state constitutional provision.

### IV.

The *Stevenson* and *Montgomery* opinions were intended by the Court in those cases to be fully retroactive; in addition, as a matter of settled Maryland law, *Stevenson* and *Montgomery* were fully retroactive.

This Court, in numerous opinions, has explained when a decision shall be applied only prospectively. The first criterion for "prospective only" application is that the decision overrules prior law and establishes a new legal standard or principle. In *Houghton v. County Com'rs of Kent Co.*, 307 Md. 216, 220, 513 A.2d 291, 293 (1986), the Court stated (emphasis added):

"As both the Supreme Court and this Court have made clear, the question of whether a particular judicial decision should be applied prospectively or retroactively, depends in the first instance on whether or not the decision overrules prior law and declares a new principle of law. *If a decision does not declare a new legal principle, no question of a 'prospective only' application arises; the decision applies retroactively in the same manner as most court decisions. United States v. Johnson,* 457 U.S. 537, 548–549, 102 S.Ct. 2579, 2586, 73 L.Ed.2d 202 (1982); *Chevron Oil Company v. Huson, supra,* 404 U.S. at 106, 92 S.Ct. at 355; *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968); *Potts v. State,* 300

Md. 567, 577, 479 A.2d 1335 (1984); *State v. Hicks,* 285 Md. 310, 336–338, 403 A.2d 356 (1979)...."

We continued in *Houghton,* 307 Md. at 221, 513 A.2d at 293: "Just recently, in *Potts v. State, supra,* 300 Md. at 577, 479 A.2d 1335, Chief Judge Murphy pointed out for this Court that 'where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively.'

"Our holding in the case at bar, ... is not 'novel' and does not overrule any earlier cases in this Court."

The Court in *American Trucking Associations v. Goldstein,* 312 Md. 583, 591, 541 A.2d 955, 958–959 (1988), further explained the initial question in determining whether a decision is to be given only prospective effect:

"In the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision. In this usual situation, 'where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively.' *Potts v. State,* 300 Md. 567, 577, 479 A.2d 1335 (1984). Thus, in the ordinary case, no issue of a 'prospective only' application arises. *See, e.g., Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968); *Houghton v. County Com'rs of Kent Co.,* 307 Md. 216, 220–221, 513 A.2d 291 (1986), and cases there cited.

"When, however, a court overrules a prior interpretation of a constitutional or statutory provision, and renders a new interpretation of the provision, the question arises as to whether the new ruling is to operate retroactively or prospectively only. Generally, in determining whether a new interpretation of a federal constitutional provision is to operate retrospectively, a court must assess the various factors set forth in *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and its progeny. *See* the discussions in *Wiggins v. State,* 275 Md. 689, 698–716, 344 A.2d 80 (majority opinion), 732–741 (dissenting opinion), 275

Md. 689, 344 A.2d 80 (1975). *See also* L. Tribe, *American Constitutional Law* § 3–3, at 30–31 & n. 26 (2d ed.1988). We have essentially followed the teaching of *Linkletter v. Walker, supra,* in deciding whether a new interpretation of a Maryland constitutional provision, statute, or rule, should receive retrospective effect. *See, e.g., State v. Hicks,* 285 Md. 310, 336–338, 403 A.2d 356, 370–371 (1979)."

*See, e.g., Attorney Grievance Commission v. Saridakis,* 402 Md. 413, 427–428, 936 A.2d 886, 894–895 (2007) (Reiterating and applying the principles of *American Trucking Associations v. Goldstein, supra); Polakoff v. Turner,* 385 Md. 467, 487–489, 869 A.2d 837, 848–851 (2005) (Summarizing both the federal law and Maryland law regarding prospective-retroactive application, and re-affirming the principles of the *American Trucking Associations case); Walker v. State, supra,* 343 Md. at 637–640, 684 A.2d at 433–434 (Reviewing in detail the Maryland law concerning prospective-retroactive application); *Jones v. State,* 297 Md. 7, 24–25, 464 A.2d 977, 985–986 (1983); *State v. Hicks,* 285 Md. 310, 336, 403 A.2d 356, 370 (1979) (On Motion for Reconsideration) "[O]ur holdings in the instant case did overrule a prior interpretation of the same [statutory] language and did set forth a new interpretation of that language. Thus, the case is an appropriate one for considering whether such new interpretation should be given only prospective effect").

It is clear that the majority of the Court in *Stevenson* and the majority of the Court in *Montgomery intended* that those two opinions be fully retroactive. This is because the majority in each case purported to believe that the two cases did not declare a new legal principle. "If a decision does not declare a new legal principle, . . . the decision applies retroactively in the same manner as most court decisions." *Houghton v. County Com'rs of Kent Co., supra,* 307 Md. at 220, 513 A.2d at 293. Even though the Court's stated position in *Stevenson* and *Montgomery* was erroneous, it is noteworthy that § 7–106(c)(2)(ii) of the Post Conviction Procedure Act refers to a standard which "is *intended* to be applied retrospectively . . . ." (Emphasis added).

Regardless of the Court's intent in *Stevenson* and *Montgomery*, however, our cases firmly establish that *Stevenson's* and *Montgomery's* new interpretation of the Maryland Constitution was fully retroactive. Under well-established Maryland law, a new interpretation of a constitutional provision or a statute is fully retroactive if that interpretation affects the integrity of the fact-finding process. This Court in *State v. Hicks, supra*, 285 Md. at 336, 403 A.2d at 370, summarized (emphasis added):

"The principles governing the retroactivity of new rulings by courts in criminal cases . . . were extensively dealt with by both the majority and dissenting opinions in *Wiggins v. State*, 275 Md. 689, 717, 344 A.2d 80, 95 (1975), and we shall not repeat in detail what was said in that case. Briefly, it was initially pointed out in *Wiggins* that *retroactivity* of application *was required where the rule involved affects the integrity of the fact-finding process*, or where it is a non-procedural rule that would render a trial constitutionally impermissible (e.g., a new double jeopardy ruling), or where it renders a certain type of punishment impermissible, 275 Md. at 701–707, 732–737, 344 A.2d 80. Under these criteria, it is clear that retroactivity of the new interpretation announced in the instant case is not required. It does not affect the integrity of the fact-finding process but is a sanction to compel compliance with the policy of prompt disposition of criminal cases."

A trial court's instructions to the jury concerning the controlling law, and the jury's application of the law to the facts, clearly involve the integrity of the fact-finding process. In a situation where a new ruling related to the jury's function, Judge Rodowsky for the Court in *State v. Colvin, supra*, 314 Md. at 24–25, 548 A.2d at 517–518, explained:

"In *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Supreme Court held that the potential for uncertainty in a jury's interpretation of the sentencing form for capital cases specified by former Rule 772A violated the eighth amendment's prohibition against cruel and unusual punishments.

* * *

"The *Mills* analysis affects 'the very integrity of the fact-finding process' with respect to finding an absence of mitigating factors. Therefore *Mills* applies retrospectively. *See Linkletter v. Walker*, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601, 614 (1965). Consequently, Colvin-El's death sentence must be vacated."

*See also Jones v. State*, 314 Md. 111, 549 A.2d 17 (1988) (the Mills decision regarding " 'the procedure employed ... by a jury' " is retroactive); *State v. Evans, supra*, 278 Md. at 210, 362 A.2d at 637 ("[W]e hold that *Mullaney* [relating to the prosecution's burden to prove beyond a reasonable doubt elements in homicide cases], involving as it does the integrity of the fact-finding function, must be given full retroactive effect in view of our recent decision in *Wiggins v. State*, 275 Md. 689, 344 A.2d 80 (1975)").

In conclusion, *Stevenson* and *Montgomery* adopted a new interpretation of the state constitutional provision making juries the judges of the law in criminal cases. Under a uniform line of Maryland Court of Appeals cases, *Stevenson* and *Montgomery* are fully retroactive. Therefore, the judgments below should be affirmed.

Chief Judge BELL joins this dissenting opinion.

Judge BATTAGLIA joins this dissenting opinion with the exception of Part II.